## UNITED STATES v. CAIN et al.
### Civ. No. 1912.

United States District Court
S. D. Mississippi, Jackson Division.
July 2, 1953.

MIZE, District Judge.

The question for determination in this controversy is the constitutionality of sections 480 through 482 of Title 26 U.S.C.A. known as the "Tax on Self-Employment Income". These sections were enacted into law as the Self Employment Contributions Act of August 28, 1950.

The facts are stipulated by the parties. The Government filed suit against Mrs. Mary D. Cain for the sum of $41.32 plus interest, and against her niece, Mary Lou Butler, the assignee of the assets of the Summit Sun, a newspaper theretofore owned by Mrs. Cain, and of all other property formerly owned by Mrs. Cain. The amount of the tax and the transfer of all of Mrs. Cain's property to her niece, leaving Mrs. Cain legally insolvent, are admitted.

If the act is constitutional the government is entitled to judgment. If it is not in conformity with the constitution, then the complaint should be dismissed.

The constitutionality of the act, in principle, has been upheld in well considered cases by the Supreme Court of the United States in Steward Machine Co. v. Davis, Collector of Internal Revenue, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, and in Helvering, Commissioner v. Davis, 301 U. S. 619, 57 S.Ct. 904, 81 L.Ed. 1307. The citation of these two opinions could dispose of the question here without more, but out of deference to the sincerity of defendant and to her attorney for his thorough, exhaustive and able brief, the matter will not be disposed of in such short order.

At this point let it be remembered that our government is divided into three departments,—the Executive, the Legislative and the Judicial, and that the Judicial shall not encroach upon the prerogatives of either of the others. The Judicial shall never question the wisdom of any act of the Legislative branch, but only determine whether the act conforms to the constitution.

The statute challenged as an abuse of Article I, Section VIII and an infringement of Amendment X of the Constitution

Joe Brown, U. S. Dist. Atty., Edwin R. Holmes, Jr., Asst. U. S. Dist. Atty., Jackson, Miss., for plaintiff.

Norman B. Gillis Jr., McComb, Miss., for defendant.

of the United States appears at 26 U.S.C. A. §§ 480–482, inclusive. Under the provisions of the act a tax is imposed upon the income of self-employed persons as the term is defined in the act. The tax is inapplicable to income derived from certain professional and business occupations, such as agricultural labor, public officers, ministers, physicians, lawyers, dentists, and other "professional" designations as in the act enumerated. The rate of the tax for the taxable years beginning after December 31, 1950, and before January 1, 1954, is 2¼% of the amount of self-employment income as defined in the act. Thereafter, the rate of tax increases ¾ of 1% every three years until December 31, 1969, after which time the tax shall be equal to 4⅞% of the self-employment income.

In the computation of self-employment income, the act excludes all income in excess of $3600 for the taxable year, less the amount of wages paid the taxpayer for the year. If a taxpayer earns less than $400 as a self-employed person, no tax is imposed thereupon.

One hundred per cent of the proceeds of the tax are, under Title II of the Social Security Act, as amended, Section 201(a) (4), 42 U.S.C.A. § 401(a)(4), appropriated in advance to a trust fund and are earmarked for that purpose only, the fund being the source of later payments to beneficiaries. The trust fund was created under the quoted section of Title II and became operative on January 1, 1940. It is known as the "Federal Old-Age and Survivors Insurance Trust Fund".

The original Social Security Act, approved August 14, 1935, provided only for a special book entry in the Treasury of the United States to be known as the Old-Age Reserve Account. The taxes collected from both employer and employee were to be paid directly into the Treasury as internal-revenue collections. The act specified that an annual appropriation was to be credited to this account in order to pay for the old-age benefits due covered employees at age 65 or later. The amount of the appropriation was to be calculated as an annual premium ascertained on a reserve basis in accordance with accepted actuarial principles and based on such tables of mortality as the Secretary of the Treasury adopted.

The benefits to the taxpayer are of two types—first, monthly payments to the taxpayer upon his reaching 65 years of age and additional payments to the members of the family, under certain conditions, and second, certain contingent lump sum payments.

Defendants contend first: that the act is no more than a federal statute which imposes a regulation and coercion in the nature of a mandatory insurance premium upon self-employed persons; second: that the exaction is not a "tax" and that consequently, the imposition of the levy through the act here assailed is not an exercise of the taxing power; that the law is, therefore, merely an exercise of general legislative power, in a field and for a purpose unauthorized by the Constitution and reserved unto the states or to the people.

Under the statute the taxes collected through the imposition of the law are from year to year such as will suffice as an annual premium to provide for the described payments to the beneficiaries. Social Security Administration, Federal Security Agency Annual Report, p. 3 (1951).

Formerly the funds collected under the Social Security program were paid directly into the treasury as ordinary internal revenue, a reserve for payments to beneficiaries being made up only by specific annual appropriations from Congress. Sec. 807(a), 42 U.S.C.A. § 1007(a), 26 U.S.C. A. § 1420(a). With the enactment of the Self-Employment Contributions Act, now under consideration, the provision authorizing Congress to make annual appropriations was deleted from the laws. Under the existing law, one hundred per cent of the monies collected are paid directly into a trust fund from which payments to beneficiaries are to be made. Social Security Act, as amended, Title II, Sec. 201.

This act does not undertake to regulate business, but is a revenue statute to raise funds with which to perform a govenmental function. It is now well settled that providing a method to support the

aged is a duty of government and is national in scope. The fact that the collection of the tax may incidentally regulate business does not render the act invalid. Linder v. U. S., 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819; U. S. v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 512. Congress has the power to tax even though the act may have a tendency to regulate business, as long as the power is not prohibited by some provision of the Constitution and is within the sphere delegated to Congress. In the Kahriger case, supra, the court said: "The substance of respondent's position with respect to the Tenth Amendment is that Congress has chosen to tax a specified business which is not within its power to regulate. The precedents are many upholding taxes similar to this wagering tax as a proper exercise of the federal taxing power." In that case the Supreme Court upheld the validity of the Revenue Act of 1951 levying an occupational tax upon persons engaged in the business of accepting wagers, whether lawful or unlawful.

 Under the General Welfare clause of the Constitution Congress has a wide discretion and before passing the act here under consideration it gave thorough study and research to the problem as is shown by the reports of the House Committee on Ways and Means and the Senate Finance Committee. It determined that there was a need for action by Congress because of the inadequacies in the Old Age Insurance Program that "Resulted in trends which seriously threatened our economic well-being". As a matter of law it is well settled that great weight should be given to the judgment of Congress in determining that an act conforms to the Constitution.

 In Helvering v. Davis, supra [301 U.S. 619, 57 S.Ct. 908], Mr. Justice Cardozo, speaking for the court, said: "Congress may spend money in aid of the 'general welfare.' Constitution, art. 1, § 8; United States v. Butler, 297 U.S. 1, 65, 56 S.Ct. 312, 319, 80 L.Ed. 477; Steward Machine Co. v. Davis, supra. There have been great statesmen in our history who have stood for other views. We will not resurrect the contest. It is now settled by decision. United States v. Butler, supra. The conception of the spending power advocated by Hamilton and strongly reinforced by Story has prevailed over that of Madison, which has not been lacking in adherents. Yet difficulties are left when the power is conceded. * * * Congress did not improvise a judgment when it found that the award of old age benefits would be conducive to the general welfare. The President's Committee on Economic Security made an investigation and report, aided by a research staff of Government officers and employees, and by an Advisory Council and seven other advisory groups. Extensive hearings followed before the House Committee on Ways and Means, and the Senate Committee on Finance. A great mass of evidence was brought together supporting the policy which finds expression in the act. * * * The problem is plainly national in area and dimensions. Moreover, laws of the separate states cannot deal with it effectively. Congress, at least, had a basis for that belief. States and local governments are often lacking in the resources that are necessary to finance an adequate program of security for the aged. This is brought out with a wealth of illustration in recent studies of the problem. * * * Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The answer to such inquiries must come from Congress, not the courts. Our concern here as often is with power, not with wisdom. Counsel for respondent has recalled to us the virtues of self-reliance and frugality. There is a possibility, he says, that aid from a paternal government may sap those sturdy virtues and breed a race of weaklings. If Massachusetts so believes and shapes her laws in that conviction, must her breed of sons be changed, he asks, because some other philosophy of government finds favor in the halls of Congress? But the answer is not doubtful. One might ask with equal reason whether the system of protective tariffs is to be set aside at will in one state or another whenever local policy prefers the rule of laissez faire. The issue is a closed one. It was fought out long ago.

When money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states. So the concept be not arbitrary, the locality must yield. Constitution, art. 6, par. 2."

From the above quotation it is clear that Congress was functioning within its sphere.

▇ Plaintiff next contends that the exaction levied by Congress is not a tax. Beyond a doubt, business and income are legitimate objects of the taxing power for purposes authorized by the Constitution. City of Newton v. Atchison, 31 Kan. 151, 1 P. 288, 290, 47 Am.Rep. 486. Generally, "a tax, in the general understanding of the term, and as used in the Constitution, signifies an exaction for the support of the government." U. S. v. Butler, 291 U.S. 1, 56 S.Ct. 312, 317, 80 L.Ed. 477; Bailey v. Drexel Furniture Co. [Child Labor Tax Case], 259 U.S. 20, 37, 42 S.Ct. 449, 66 L. Ed. 817, 21 A.L.R. 1432. The exaction of the tax imposed under the Self-Employment Contributions Act is for the support of one of the functions of the government as defined by Congress within its power.

Under the authorities heretofore mentioned the exacted contribution is a tax. The Supreme Court in the Steward Machine Company case, supra, held that the problem of unemployment was national as well as local and that the tax imposed by Title IX of the Social Security Act of August 14, 1935, upon the employer of labor, described as "an excise tax, with respect to having individuals in his employ", and which is measured by prescribed percentages of the total wages payable by the employer during the calendar year, is either an "excise", a "duty", or an "impost", within the intent of Art. I, Sec. 8, of the Constitution, and complies with the requirements of uniformity throughout the United States. The word "tax" has a broad meaning and much latitude is allowed Congress in defining the term and determining its application to a legislative act. In the early history of our country it was defined in the case of Hamilton v. Dillin, 11 Fed.Case page 332, No. 5,979, as "a rate or sum of money assessed on the person or property of a citizen by government for the use of the nation or state". It has various definitions, depending upon the facts under which it is levied. Words and Phrases, Vol. 41, p. 116 et seq., Congress having determined that the care of the aged is a governmental function and duty, it then had the power within the limitations of the Constitution to levy the tax.

It is not for the courts to determine if an act of Congress is wise or unwise, but that power is for Congress alone. The duty of the courts ends when it is found that the act is within the power of Congress. In the case of U. S. v. Butler, supra, the Supreme Court very aptly said: "There should be no misunderstanding as to the function of this court in such a case. It is sometimes said that the court assumes a power to overrule or control the action of the people's representatives. This is a misconception. The Constitution is the supreme law of the land ordained and established by the people. All legislation must conform to the principles it lays down. When an act of Congress is appropriately challenged in the courts as not conforming to the constitutional mandate, the judicial branch of the government has only one duty; to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former."

The Constitution means what the Supreme Court of the United States says it means. That is the Court of last resort and its pronouncements are conclusive upon all inferior courts. If a law is unwise, but within the limitations of the Constitution, then the only remedy is with Congress. The courts are powerless to inquire into its wisdom. The act here challenged was within the power of Congress to enact and is constitutional.

Counsel for defendant has filed a very able and exhaustive brief and is to be complimented for his diligence, but his difficulty is the fact that these same arguments and most of his authorities were be-

fore the Supreme Court in the cases supra and were there repudiated. He quotes at length from the dissenting opinion of Mr. Justice McReynolds in the Steward Machine Company case and adopts the reasoning of that distinguished and eminent jurist, but overlooks the fact that the majority of the Court declined to follow him. His was a dissent, not the law as declared by the controlling majority. The dissent of the Justices there only emphasizes the thorough consideration which the Supreme Court gave that case.

It is for the Supreme Court to determine the line of demarkation beyond which Congress cannot go. There is a point in legislation where Congress must stop, but in the present act it has not gone beyond that point. Again referring to the Steward Machinery Company case [301 U.S. 548, 57 S. Ct. 892], Mr. Justice Cardozo said: "We do not fix the outermost line. Enough for present purposes that wherever the line may be, this statute is within it. Definition more precise must abide the wisdom of the future."

The transfer by defendant to her niece, Mary Lou Butler, of all defendant's property created a trust relationship, by which Mary Lou Butler holds the property in trust for the payment of the tax, and she is liable as transferee.

The law is well stated in Martens, "Law of Federal Income Taxation", Section 53.-04, as follows: "Liability in equity exists where a transfer of assets is made without adequate consideration, which transfer leaves the taxpayer insolvent and unable to meet his tax liability." Also see Section 53.26, as follows: "It is a transfer of assets that leaves the taxpayer insolvent and unable to pay his tax liability which gives rise to the liability of the transferee."

The doctrine of a trust fund has been declared in many cases. Among others see: Phillips v. C. I. R., 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Steinberger v. U. S., 9 Cir., 81 F.2d 1008; U. S. v. Oscar Frommel & Bro., 2 Cir., 50 F.2d 73; McPherson v. Commissioner, 9 Cir., 54 F.2d 751.

Judgment may be entered for plaintiff and an order may be drawn in accord herewith.