279 A.2d 413.

MEREDITH. M. EIDAM *vs.* LUTHER P. EIDAM *et al.*

JUNE 29, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The plaintiff brought this complaint for money damages and equitable relief against her former husband, Luther P. Eidam, and Sandra L. Mahoney, his present wife, by a writ of summons and an attachment dated October 30, 1969, attaching real estate at 50 Mark Drive, Cranston, Rhode Island. The real estate then stood in the name of Sandra L. Mahoney.

The complaint alleges in substance that plaintiff and defendant Luther P. Eidam were divorced by final decree entered on July 26, 1968; that her former husband has failed to make payments for the support of plaintiff and her three minor children in accordance with the provisions of such final decree and is currently in arrears in the amount of $7,000, which amount constitutes a judgment against him; that in September 1968, he conveyed his real estate at 50 Mark Drive to his present wife, Sandra L. Mahoney, for the purpose of defrauding plaintiff. The complaint prays for the following relief: (1) judgment against her former husband for $7,000, plus interest and costs; (2) that the conveyance to Sandra L. Mahoney be declared null and void and the judgment be declared a lien on said real estate; and (3) judgment for costs against defendant Sandra L. Mahoney.

The defendants, on November 24, 1969, filed a general denial and a motion to vacate the attachment. In support of this motion to vacate they filed supporting affidavits.

In his affidavit defendant Luther P. Eidam states that, in August 1968, plaintiff showed him letters from the two banks which had mortgages on the property at 50 Mark Drive advising that mortgage foreclosure proceedings be instituted because payments were in default; that his former wife asked him to sign an agreement to hold her harmless from any deficiency balance resulting from any foreclosure proceedings; that in consideration of his promise to hold her harmless, plaintiff executed a quitclaim

deed conveying her interest in the real estate to him; that at the time of the conveyance on September 7, 1968, the property was subject to two mortgages totalling $31,500; that plaintiff went to the first mortgagee and requested that they remove her name from the mortgage and note because plaintiff had already conveyed the property to him; that at the time of the conveyance to him he did not owe his former wife any money; that on September 13, 1968, he conveyed whatever interest he had in the property in question to Sandra L. Mahoney for the sum of $1,500; and that at the time of such conveyance he did not owe plaintiff any money and was not in arrears in his support payments under the terms of the final decree of divorce.

The defendant Sandra L. Mahoney, in her affidavit, states that on September 13, 1968, she purchased whatever interest Luther P. Eidam had in the real estate in question for the sum of $1,500; that at the time of such conveyance she was aware that the property had a fair market value of approximately $34,000 subject to two mortgages totaling $31,500; that from September 13, 1968, she paid both mortgages; and that she did not owe plaintiff any money then or at the time she filed the instant affidavit.

In reliance on their affidavits, defendants renewed their motion to vacate the attachments, basing the same on their claim that Sandra L. Mahoney was a bona fide purchaser for value of the property in dispute and that defendant, Luther P. Eidam, no longer had legal title thereto.

The plaintiff thereafter filed a counter-affidavit claiming that defendants' motion to vacate the attachment was in effect a motion for summary judgment. The plaintiff further alleges therein that there is a valid equitable claim upon this property as there is a factual dispute on the issue of whether defendant Sandra L. Mahoney is in fact

a bona fide purchaser for value of such property; that the property was or had been currently advertised for sale in the upper forty thousand dollars; that defendants were married and lived together in said premises within a few weeks after the transfer of the property to Sandra L. Mahoney; that they have continued to reside therein; that defendant Luther P. Eidam had not supported plaintiff or his children for over a year despite the court order contained in the final decree; and that when the property is sold defendants plan to reside in Chicago where her former husband had already moved upon obtaining employment there.

The motion to vacate the attachment was heard before a justice of the Superior Court.[1] After hearing oral arguments he rendered a brief bench decision. He found in substance that plaintiff gave up her interest in the real estate by deed; that the fact that her former husband decided to give it to some other party presented no problem because it was done immediately after the entry of the final divorce decree; and that there was obviously no time factor sufficient to allow any arrearage to build up. He held that since there was no arrearage due at the time of the conveyance from defendant Luther P. Eidam to defendant Sandra L. Mahoney, plaintiff's attachment was not sufficient in law to hold the property. He, therefore, granted defendants' motion to vacate the attachment as of that date and, on December 30, 1969, an order to that effect was entered in the Superior Court.

On January 19, 1970, plaintiff filed a notice of appeal with the clerk of the Superior Court pursuant to Super. R. Civ. P. 73.[2] The record indicates that she took no further

---

[1] This motion was heard and decided by Mr. Justice Kiely.

[2] On December 29, 1970, plaintiff, being uncertain as to the proper method of seeking a review of this order filed a motion in this court for leave to file a petition for certiorari. On February 9, 1971, an order was entered in this court denying plaintiff's motion, 108 R. I. 910-11, 273 A.2d 325.

steps to perfect her appeal until April 1970. It appears from statements in the briefs, which we shall treat as a stipulation of facts, that plaintiff did not pursue her appeal because she was notified by defendants' counsel that the property was being sold at a mortgagee's sale and that there would be no equity remaining because of the large mortgages on the property. Later, however, upon learning that there was in fact a surplus of approximately $1,-800 remaining after the sale, plaintiff attempted to obtain an extension of time for filing the transcript in order to perfect her appeal and defendants filed a motion to strike the appeal. The following activity took place.

On April 27, 1970, defendants filed in the Superior Court a motion "to strike the plaintiff's claim of appeal," without stating the ground or grounds on which they based their motion. On the same day plaintiff filed a motion requesting that the time for perfecting her appeal be extended.

On the next day defendants filed a "Motion to Dismiss the Appeal" on the ground that the appeal in question was premature and also on the ground that plaintiff had failed to comply with the "Rules of Civil Procedure" with respect to said appeal. The defendants also filed an objection to plaintiff's motion to extend the time for perfecting her appeal to this court.

On April 29, 1970, plaintiff filed an objection to defendants' motion "to strike and/or to dismiss plaintiff's claim of appeal."

The plaintiff's motion to extend and defendants' motions to strike and/or to dismiss plaintiff's claim of appeal were heard before another justice[3] of the Superior Court on May 7, 1970. After hearing arguments of counsel he rendered

---

[3]This motion was heard and decided by Mr. Justice Gallant.

a decision from the bench. He held in substance that the order vacating the attachment was an interlocutory order; that an appeal does not lie from interlocutory orders except in certain specified cases; that the dissolution of an attachment was not such a case. Accordingly, he concluded that an appeal did not lie from the order vacating the attachment on the premises in question and granted defendants' motion to strike plaintiff's claim of appeal. He passed plaintiff's motion for an extension of time on the ground that such motion became moot in view of his decision granting defendants' motion to strike plaintiff's appeal. An order granting defendants' motion to strike plaintiff's appeal and dismissing her claim of appeal was entered on May 8, 1970, in the Superior Court.

On May 11, 1970, plaintiff filed a notice of appeal from the order entered on May 8, 1970, granting defendants' motion to strike and dismissing plaintiff's claim of appeal.

While still other proceedings have transpired between the parties since that time, we shall not discuss them since the only matter before us is plaintiff's appeal from the order entered on May 8, 1970, granting defendants' motion to dismiss plaintiff's appeal from the December 30, 1969 order vacating the attachment on the property in question. The plaintiff contends that the grounds on which the trial justice based his decision dismissing plaintiff's appeal are not valid grounds for dismissal by the Superior Court. We agree.

The grounds authorizing a dismissal of an appeal by the Superior Court are set forth in the second paragraph of Super. R. Civ. P. 73(a)[4] which reads as follows:

---

[4]See commentary 73.13 in 1 Kent, *R. I. Civ. Prac.*, at 524, where the author states:

"Rule 73(a) makes it clear that the appeal is claimed by filing a notice of appeal with the Superior Court clerk, and that the validity of the appeal is not affected by the failure of the appellant to take the further steps to secure review. However, failure to take such steps,

"A party may appeal from a judgment by filing with the Superior Court clerk a notice of appeal. Failure of the appellant to take any one of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, but is ground for dismissal thereof by the Superior Court unless circumstances excuse the failure and justice demands that the appeal be heard. If an appeal has not been docketed, the parties, with the approval of the Superior Court, may dismiss the appeal by stipulation filed in that court, or the court may dismiss the appeal upon motion and notice by the appellant."

Thus it is clear that the trial justice did not have jurisdiction to dismiss the appeal for the reasons that he did. The only question properly before him was whether to grant or deny plaintiff's motion for an extension of time for filing the transcript. He did not pass on this question, saying that in view of his decision the motion for extension of time became moot and he, therefore, passed that motion. *Compare Devereaux* v. *McGarry's, Inc.,* 107 R. I. 325, 266 A.2d 908, where we held that the Superior Court has no jurisdiction to dismiss an appeal after it has been docketed in the Supreme Court.

However, even though the trial justice erred in dismissing plaintiff's appeal, since all the papers are now before us, we will treat defendants' motion to vacate the attachment as a motion to dismiss, addressed to this court, on the ground that the order vacating the attachment was merely interlocutory and, therefore, the appeal therefrom was premature.

The general rule governing appeals in civil actions under

those required by Rule 75, renders the appeal subject to dismissal by the Superior Court. This action is itself subject to Supreme Court review. Rule 73 (a) also provides that the Superior Court may dismiss an appeal which has not been docketed in the Supreme Court by stipulation of the parties or upon motion by the appellant on notice to the adverse parties."

our statutes,[5] as well as the exceptions thereto, have been set forth in a long line of cases starting with *McAuslan* v. *McAuslan*, 34 R. I. 462, 83 A. 837 (1912).[6] It is the settled rule that a litigant may not obtain a piecemeal review of his case by this court. However, as pointed out in *Redfern* and *McAuslan*, both *supra*, there are exceptions to this rule. Professor Kent has stated the rule as follows, in commentary 73.4:

> "In addition to the interlocutory orders made appealable by G. L. 1956, §9-24-7, there has been developed a doctrine, judicial in origin, whereby decrees strictly interlocutory, which entail consequences of sufficient seriousness so that they can be said to contain an element of finality, are treated by the Supreme Court as immediately appealable in order to prevent possibly injurious consequences. Equitable in its beginnings, this doctrine was first enunciated in Rhode Island in the leading case of McAuslan v. McAuslan.
>
> "In its opinion in that case the court recognized two types of situations in which exceptions to the finality principle are recognized. One is that referred to above, the interlocutory decree which, because of its possible injurious consequences, requires prompt review, and for that reason has sufficient finality to be subject to appeal. The other * * *. The former exception involves the doctrine for which McAuslan is frequently cited. To fall within this exception the injury apprehended must be shown to be clearly imminent and irreparable." *Coen* v. *Corr*, 90 R. I. 185, 156 A.2d 406; *Acme Finishing Co.* v. *Greenville Finishing Co.*, 43 R. I. 294, 111 A. 721.

The order vacating the attachment in this case was in-

---

[5]*See* G. L. 1956 (1969 Reenactment), §9-24-1, *et seq.*

[6]*See Industrial National Bank* v. *Colt*, 101 R. I. 488, 224 A.2d 900; *Apollonio* v. *Kenyon*, 101 R. I. 598, 225 A.2d 789; *Redfern* v. *Church of the Mediator*, 101 R. I. 182, 221 A.2d 453; *Rosenfeld* v. *Rosenfeld*, 51 R. I. 381, 155 A. 244; *Troy* v. *Providence Journal Co.*, 43 R. I. 22. 109 A. 705. See also Super. R. Civ. P. 73, and commentaries 73.1, 73.2, 73.3 and 73.4 in 1 Kent, *R. I. Civ. Prac.*, 508 *et seq.*

terlocutory in a strict sense, but the question we must decide is whether that order has such elements of finality that this court should act before the case is finally terminated in order to prevent possible injurious consequences. *McAuslan* v. *McAuslan, supra.*

The plaintiff argues in part that the order vacating the attachment in question, if upheld, would cause serious, imminent and injurious irreparable consequences to her case. She contends that the removal of the attachment is tantamount to a summary judgment and results in the removal of the real estate and any equities connected therewith, out of reach of the plaintiff and beyond the orders of this court. In such circumstances, she argues, there is no longer any case for plaintiff to try as her action alleging a fraudulent conveyance, under G. L. 1956 (1969 Reenactment), §6-16-1, is extinguished if there is no real estate to impress the alleged fraudulent conveyance upon. We believe there is merit to plaintiff's argument. In our judgment the order vacating the attachment has such elements of finality that it falls within the exception to the general rule because the injury apprehended is clearly imminent and irreparable, *Coen* v. *Corr, Acme Finishing Co.* v. *Greenville Finishing Co.,* both *supra,* and is, therefore, appealable. We, therefore, address ourselves to the merits of the order entered on December 30, 1969, vacating the attachment.

This is an equitable attachment. Indeed it is expressly referred to as such by plaintiff in her brief where she states that this "action was commenced * * * by a writ of summons and an equitable attachment dated October 30, 1969, attaching real estate * * *." General Laws 1956 (1969 Reenactment), §10-5-5, deals with writs of attachment after the filing of an equitable complaint. It reads as follows:

> "10-5-5. Writ of attachment after filing of equitable complaint.—In any civil action of an equitable character, at or after the filing of the complaint, the complainant may move the superior court, ex parte, to issue a

writ of attachment, to run against the property of the defendants or any defendant in said cause; and the court, in its discretion, if the cause be of such a nature that an attachment of property be for the proper security of the complainant, shall on such motion, properly supported by affidavits to be filed in said cause, enter an order granting a writ of attachment * * * and shall be served in like manner and be subject to like incidents as a writ of attachment issued at the commencement of a civil action, and for such ad damnum, as shall be directed in said order and stated in such writ."

It is undisputed that plaintiff did not comply with the provisions of this statute relative to equitable attachments. She did not apply to the Superior Court for the issuance of an equitable attachment. Her failure to comply with the pertinent provisions of this statute is dispositive of her appeal.[7] As the court pointed out in *Marsh* v. *Moore*, 52 R. I. 458, 161 A. 227:

"The procedure in a suit in equity is different, as a motion by complainant and an order by the court for the issuance of the writ is required. The order is discretionary with the court and may direct the attachment only of so much of the property of the respondent as the court shall decree." *Id.* at 461, 161 A. at 228.

See also commentary 4.16 in 1 Kent, *R. I. Civ. Prac.*, where the author discusses the three types of cases in which attachment, including trustee process, is available. With respect to equitable attachments he says:

"On motion to the court supported by affidavit, a writ of attachment may be issued pursuant to G. L. 1956, §10-5-5 (as amended by P. L. 1965, c. 55, §50) in an equitable action." *Id.* at 46.

Thus, we hold that because of the plaintiff's failure to

---

[7]*See Heick* v. *Rizzo*, 106 R. I. 840, 262 A.2d 640, where we denied a petition for a writ of certiorari to review the dismissal by the Superior Court of an equitable attachment because of failure to comply with §10-5-5.

comply with the controlling statute, the order dismissing the attachment was proper.

The plaintiff's appeal is denied and dismissed, and the case is remitted to the Superior Court for further proceedings.

*Johnson & Johnson, Martin Johnson,* for plaintiff.

*Kirshenbaum & Kirshenbaum, Alfred Factor,* for defendants.