406 A.2d 1241.

Edwin E. Cull *et al.* *vs.* Edmond L. Vadnais.

AUGUST 27, 1979.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.    This is an appeal initiated by Edmond L. Vadnais from a Superior Court order on November 30, 1977. That order granted Edwin E. Cull's and Genevieve Gustafson's motions to attach real estate held by the defendant and his wife as tenants by the entirety, and to preliminarily enjoin the defendant from transferring his real estate pending service of the writ of attachment.

After the case was docketed in this court, plaintiffs filed a motion to dismiss the appeal on the grounds that the grant of the writ of attachment in the present case is not an appealable order and that this court should not review a lower court's grant of a writ of attachment by writ of certiorari. On January 19, 1978, defendant filed a motion in opposition to plaintiffs' motion to dismiss the appeal. Before addressing whether the trial court's grant of plaintiffs' motion to attach is an appealable order, we entered an order on March 2, 1978, remanding the case to the Superior Court in order to expedite disposition of the matter on its merits. While the case was pending in this court, the Superior Court heard the case on the merits pursuant to plaintiffs' motion for summary judgment and entered judgment for plaintiffs.

The facts, although not pertinent to the issues before us at this time, are summarized as follows. The plaintiffs filed a complaint in Superior Court upon learning that defendant had represented himself as secretary-treasurer of a bona fide loan association that both loaned money to employees of the Providence Journal and paid investors a high rate of return. Relying upon defendant's representation, plaintiffs loaned money to defendant at high interest rates. Later, plaintiffs learned that defendant had been personally loaning money to Providence Journal employees. The plaintiffs allege that they had been misled and the record reveals the defendant attempted to arrange a method whereby he could reimburse them. The plaintiffs then brought this action requesting compensatory and punitive damages and filed a motion with the trial court seeking a prejudgment attachment and an ex parte restraining order pending a hearing on their motion for a prejudgment attachment. The restraining order was granted the day the motion was filed. Later, plaintiffs filed a motion for a preliminary injunction. In the order granting plaintiffs' motion to attach defendant's property, the trial court also granted plaintiffs' motion for a preliminary injunction pending service of the writ of attachment.

After the trial court entered summary judgment for plaintiffs upon their motion, plaintiffs filed a renewed motion to dismiss defendant's appeal on the ground that the Superior Court's disposition of the case had mooted the issue on appeal. We have denied that motion.

The defendant has raised two issues before this court: (1) whether an order granting a prejudgment attachment of real property is properly appealable[1] and (2) whether property held as a tenancy by the entirety is exempt from prejudgment attachment.[2] We shall consider both of these issues, not-

[1]Originally, the plaintiffs sought an attachment of the defendant's bank account, but in light of the bank's filing of an affidavit of no funds, we need not address this issue.

[2]The defendant has also alleged that the order granting the plaintiffs' motion to attach was one continuing an injunction and is therefore appealable under G.L. 1956 (1969 Reenactment) §9-24-7. This section permits appeals to the Supreme

withstanding the fact that these questions have become moot as a result of the Superior Court's disposition of this case on its merits. These issues are of such importance that we have decided not to wait until a future date to render an opinion. Our decision at this time will thus avoid procedural duplication should a similar factual situation arise.

## I

The defendant contends that the grant of a motion for a prejudgment attachment is a final judgment, appealable under G.L. 1956 (1969 Reenactment) §9-24-1. Section 9-24-1 reads as follows:

> "Filing of appeal.—Any party aggrieved by a final judgment, decree, or order of the superior court may, within the time prescribed by applicable procedural rules, appeal to the supreme court. Subject to the provisions of applicable procedural rules, such appeal shall be taken by filing a claim of appeal in the office of the clerk of the court from which the appeal is taken, and shall deposit with said clerk an amount not exceeding fifty dollars ($50.00) as prescribed by the rules and regulations of the supreme court."

The defendant cites *E.J. Hansen Elevator, Inc.* v. *Stoll*, 167 Conn. 623, 356 A.2d 893 (1975), in support of his position. In *Hansen*, the court found that orders that both grant and deny motions for a prejudgment remedy meet the tests of finality: the orders terminate a separate and distinct proceeding, conclude the rights of some or all of the parties, and effectuate a conclusion of the rights of the parties so that further proceedings cannot affect them. *Id.* at 626, 356 A.2d at 895.

Court whenever the Superior Court grants or continues an injunction by an interlocutory order or decree. The temporary restraining orders and the preliminary injunction in this case were granted only to safeguard the defendant's real property pending the prejudgment attachment hearing and service of the attachment. Because the temporary restraining orders and the injunction had no independent status and have now expired by their own terms, the issue is moot.

The defendant also cites *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221, 1225, 93 L. Ed. 1528, 1536 (1949), for the proposition that prejudgment attachment orders are not only collateral to rights asserted in the action, but also are too independent of the action itself to require deferral of appellate consideration until adjudication of the entire case. The *Cohen* case, however, which involved a denial of a motion to require the plaintiff to post security, was decided prior to the United States Supreme Court case *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 70 S. Ct. 861, 94 L. Ed. 1206 (1950). *Swift* concerned an order that vacated a foreign attachment of a vessel. In *Swift*, the Supreme Court, *in dictum,* distinguished between a situation in which an order dissolves a prejudgment attachment and one in which such an attachment is upheld pending determination of the principal claim. *Id* at 689, 70 S. Ct. at 865, 94 L. Ed. at 1210-11. In upholding appellate review in the former case only, the Court reasoned that

> "[a]ppellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Id.*

The Court thus distinguished the result of an order dissolving a prejudgment attachment from the effect on the parties when an attachment is upheld pending resolution of the principal claim. In the latter event, the Court found that the rights of all the parties can be adequately protected during the course of litigation on the main cause of action. *Id.*

Notwithstanding the fact that defendant has requested us to follow the precedent set by the Connecticut court, we have chosen to adopt the reasoning of the United States Supreme Court in *Swift*. Therefore, as did the Supreme Court, we hold that orders granting prejudgment attachments are interlocutory and do not fall within the *Cohen* rule, which allows appeals when an order is deemed to "determine claims of right separable from, and collateral to, rights asserted in the action * * *." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. at 546, 69 S. Ct. at 1225-26, 93 L. Ed. at 1536.

Alternatively, defendant argues that an order granting a prejudgment attachment has injurious consequences that vest in that order elements of finality. The defendant claims that these elements bring the order within the doctrine articulated by this court in *McAuslan* v. *McAuslan,* 34 R.I. 462, 83 A. 837 (1912). The *McAuslan* doctrine is an exception to the general rule that litigants generally may not obtain piecemeal review of their case in this court. *See Eidam* v. *Eidam,* 108 R.I. 673, 680, 279 A.2d 413, 417 (1971). The *McAuslan* court recognized that in many instances hardship and injury would result if this court were to refuse to hear certain appeals technically interlocutory in nature, when the merits of the cause had not yet been determined in the lower court. *See McAuslan* v. *McAuslan,* 34 R.I. at 470, 83 A. at 840. In these circumstances, " '* * * the decree is held to possess such an element of finality as to bring it within the terms of the statute limiting the right to appeal only from final decrees.' " *Id., quoting DuFour* v. *Lang,* 54 F. 913, 916 (5th Cir. 1892). We extended the *McAuslan* rule to the facts in *Eidam,* where we held that an order vacating a prejudgment attachment possesses elements of finality because the injury apprehended is clearly imminent and irreparable. *Eidam* v. *Eidam,* 108 R.I. at 681, 279 A.2d at 417-18. However, we believe that usually no harm befalls defendants subject to prejudgment attachment orders in respect to real estate because prejudgment attachments do not obliterate property rights.[3] Instead, these attachments merely prevent defendants from disposing of their real property before the trial court can determine whether they are liable. *See Application of Tiene,* 19 N.J. 149, 160, 115 A.2d 543, 549 (1955) (status quo maintained). We thus hold as a general rule that because orders granting prejudgment attachments of real estate are inter-

---

[3]In Rhode Island defendants are protected by a statutory procedure governing motions to attach personalty or real estate. *See* G.L. 1956 (1969 Reenactment) §10-5-2; R.I. Civ. P. 4(j). Both of these provisions eliminate the possibility of a court order granting ex parte a motion to attach.

locutory and involve no threat of hardship or injury, such orders do not fall within the *McAuslan* doctrine.[4]

For the above reasons, we hold that orders allowing prejudgment attachments are not appealable.

## II

The second issue raised by defendant is whether real estate held as a tenancy by the entirety is exempt from prejudgment attachment.[5]

Tenancies by the entirety, as they were known at common law, are recognized in Rhode Island. *Bloomfield* v. *Brown*, 67 R.I. 452, 456, 25 A.2d 354, 356 (1942). At common law, tenancies by the entirety are created when there exist the four unities integral to the existence of the joint tenancy, namely the unities of time, interest, title and possession, *Knibb* v. *Security Insurance Co.*, 121 R.I. 406, 410, 399 A.2d 1214, 1216 (1979), plus the fifth unity, two natural persons as one person in law. *Van Ausdall* v. *Van Ausdall*, 48 R.I. 106, 108, 135 A.850, 851 (1927). Estates held by the entirety are thus uniquely premised upon the common-law doctrine that husband and wife are one, so that they take the whole estate as a single person. 4 Thompson, *Real Property* §1784 at 61-62 (1979). As tenants by the entirety, both husband and wife hold *per tout et non per my. Id.* at 59. Each party thus holds all, but neither holds a separate share. The result is that neither the husband nor the wife can dispose of his or her part without the consent of the other. *Id.*

---

[4]We recognize, however, that there may be instances where orders granting prejudgment attachments could lead to possible injurious consequences. These orders would be appealable in accordance with the principles set forth in the *McAuslan* case.

[5]The attachment process is delineated in R.I. Civ. P. 4(j). Under this rule, a motion for a writ of attachment is "granted only upon a showing that there is a probability of a judgment being rendered in favor of the plaintiff and that there is a need for furnishing the plaintiff security in the amount sought for satisfaction of such judgment, together with interest and costs." *See* R.I. Civ. P. 4(j)(3).

The extent to which a tenancy by the entirety is subject to the claim of creditors of only one of the spouses is only partially settled in this jurisdiction. At common law, because the husband was entitled to the possession of the wife's realty during her lifetime, his interest could be sold on execution to satisfy his debts. 4 Thompson, *Real Property* §1790 at 102. In *Bloomfield* v. *Brown,* 67 R.I. 452, 460, 25 A.2d 354, 358 (1942), we had the occasion to consider whether, under the Married Women's Rights Act,[6] the husband's interest in a tenancy by the entirety is subject to levy and sale on execution by his judgment creditor. We decided that because the estate was held by the husband and wife as a tenancy by the entirety, the husband's interest could not be alienated from the estate without the wife's consent. *Id.* at 464, 25 A.2d at 360. For this reason, we held that an estate held by the entirety is not subject to levy and sale on an execution based upon a judgment against the husband alone. *Id.*

The defendant refers us to *Bloomfield,* arguing that if one cannot levy and sell on execution property held by the entirety, then one should not be able to attach that property. In support of this contention, defendant cites *Barron* v. *Arnold,* 16 R.I. 22, 11 A.298 (1887), where this court considered the question whether liquor, which could not be sold legally, could be attached. We reasoned that because the property could not be sold without violating the law, the attachment could not be perfected by sale on an execution. We therefore held that the liquor could not be attached.

---

[6]The Married Women's Rights Act, G.L. 1956 (1969 Reenactment) ch. 4 of tit. 15, was conceived by the General Assembly "to raise up the wife, in the eyes of the law, to the same position as that of the husband, thus entitling her to take and hold real estate in her own right as a natural person in any manner permitted by existing law, free from the control formerly exercised by the husband at common law. The act is emancipatory and protective in character." *Bloomfield* v. *Brown,* 67 R.I. 452, 462, 25 A.2d 354, 359 (1942).

The *Barron* case, however, is inapposite to the present situation which involves real estate, not personalty. The facts at hand are therefore governed by §10-5-9,[7] which describes the method to be utilized for attaching real estate. This statute allows the issuance of a writ to attach "real estate, or the right, title and interest of any defendant therein * * *."

The defendant alleges, however, that his interest in a tenancy by the entirety is analogous to a husband's estate by curtesy. In *Greenwich National Bank* v. *Hall*, 11 R.I. 124 (1875), we observed in relation to a tenancy by the curtesy initiate that "during [the life of the wife, the] husband has no interest in her real estate which can be attached in any suit to which she is not a party." *Id.* at 128. A tenant by the curtesy has no more than a "mere possibility of an interest" because that interest only arises for the term of the husband's life if he survives his wife, who dies after he has had issue born alive of her and capable of inheriting her estate.[8]

In contrast with tenants by the curtesy, however, tenants by the entirety are each presently seized and possessed of an interest in the entire estate. 4 Thompson, *supra*, §1784 at 59, 63. We therefore hold that a spouse's interest in real property held by the entirety is legally sufficient to sustain a prejudgment attachment notwithstanding the fact that that interest is not subject to levy and sale on execution. Our holding in this regard is strengthened by the case of *Wood* v. *Watson*, 20 R.I. 223, 37 A.1030 (1897), where we held that even contingent, executory or future interests in real estate may be attached under Rhode Island statutory language identical to §10-5-9. *Id.* at 224, 37 A. at 1030.

---

[7]General Laws 1956 (1969 Reenactment) §10-5-9 provides in pertinent part as follows:

"Method of attaching real estate.—The officer commanded by any writ to attach real estate, or the right, title and interest of any defendant therein, shall attach the same by * * *."

[8]*Black's Law Dictionary* 1636 (4th ed. 1968) (definition of tenant by the curtesy).

The defendant also contends that attachments on property held by the entirety are futile because that property can be transferred by a conveyance of both husband and wife, with the intent of defeating the claims of the husband's creditor. Assuming without deciding that there is merit to the defendant's contention, we note that if the husband and wife do not convey their property before one spouse dies, and if the debtor spouse survives the death of the other spouse, the creditor may enforce a prior attachment pursuant to an active, unsatisfied judgment, thus compelling the entirety property to be sold on an execution. *See L & M Gas Co.* v. *Leggett*, 273 N.C. 547, 551, 161 S.E.2d 23, 26 (1968). In any event, our answer to the question whether the interest of a tenant by the entirety is attachable should not depend upon an event that may never occur; namely, conveyance of the property by both the husband and the wife.

For the reasons stated above, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the record is remanded to the Superior Court.

*Joseph F. Dugan*, for plaintiffs.

*Oster, Fay, Groff & Prescott, George M. Prescott*, for defendant.