**UNITED STATES of America**

v.

**Howard A. and Marjorie E. BRYNES.**

**Civ. A. No. 92–0018–T.**

United States District Court,
D. Rhode Island.

March 25, 1994.

Everett C. Sammartino, U.S. Attorney's Office, Providence, RI, George P. Elipoulos,

U.S. Dept. of Justice, Tax Div., Washington, DC, for plaintiff.

Gerard McG. DeCelles, Providence, RI, for Howard A. Brynes.

Alan T. Dworkin, Warwick, RI, for Marjorie E. Brynes.

## DECISION AND ORDER

TORRES, District Judge.

This is an action brought pursuant to 26 U.S.C. § 7403 to reduce a federal tax assessment against Howard A. Brynes to judgment and to foreclose what the government contends is a lien on certain real property formerly owned by Howard and his wife, Marjorie. The issues presented are whether the property in question is subject to a tax lien and, if so, whether the United States should be permitted to foreclose that lien.

## FACTS

This case was tried to the Court sitting without a jury. Marjorie Brynes was the only witness. Based on her testimony and the documentary evidence, I find the facts to be as follows. In 1971, Howard and Marjorie Brynes purchased a home at 143 Longview Drive in Cranston, Rhode Island as joint tenants. As the years passed, their marriage foundered. On April 4, 1985, Howard was indicted for failing to file federal income tax returns and for attempting to bribe an IRS agent. The following day Marjorie filed a divorce petition.

One month later, in connection with the divorce proceeding, Howard and Marjorie executed a deed converting their ownership from joint tenancy to a tenancy by the entirety. The deed effecting that change was recorded on July 16, 1985. The purpose of changing the form of ownership was to prevent creditors of one spouse from forcing a sale of the property to satisfy that spouse's debts.[1] On November 25, 1985, the IRS made an assessment against Howard A.

Brynes in the amount of $9,804.74 plus interest and penalties for delinquent taxes.

In March, 1988, Howard and Marjorie executed and recorded a deed conveying 143 Longview Drive to Marjorie. Shortly thereafter, they entered into a property settlement agreement that was incorporated into an interlocutory divorce decree by the Rhode Island Family Court.[2] Under the property settlement agreement Marjorie received exclusive use of 143 Longview Drive, and Howard assumed sole responsibility for paying the "federal tax lien upon said property." In return, Marjorie waived her right to alimony "upon the payment of the federal tax lien by [Howard]." Several months later, on August 23, 1988, the IRS recorded a notice of its federal tax lien against Howard.

The government contends that the title received by Marjorie by virtue of the March, 1988, deed was subject to its lien on Howard's interest in the property. Alternatively, it argues that the transfer to Marjorie should be set aside as fraudulent. In either event, the government asserts that it is entitled to foreclose its tax lien by forcing a sale of the property.

## DISCUSSION

### I. PRIORITY OF THE FEDERAL TAX LIEN

Under 26 U.S.C. § 6321, the failure of any person to pay a tax liability after demand creates a lien upon that person's property. The lien arises "at the time the assessment is made." 26 U.S.C. § 6322. Generally speaking, such lien takes precedence over all other interests in the property. *United States v. V & E Engineering & Constr. Co.*, 819 F.2d 331, 335–36 (1st Cir. 1987). However, § 6323(a) carves out an exception to that general rule. It provides that a tax lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until" the federal tax lien is properly record-

---

**1.** Under Rhode Island law, when a husband and wife own real estate as tenants by the entirety, creditors of one spouse may attach that spouse's interest in the property but may not force a sale of the property to satisfy their liens until the tenancy is severed. *In re Gibbons*, 459 A.2d 938,

940 (R.I.1983); *Cull v. Vadnais*, 122 R.I. 249, 406 A.2d 1241 (1979).

**2.** Marjorie obtained a final divorce decree from the Rhode Island Family Court on October 23, 1993.

ed. 26 U.S.C. § 6323(a); *see United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770, 774 (1963).

In this case, the tax lien arose on November 25, 1985, the date of assessment. At that time, Marjorie and Howard owned 143 Longview Drive as tenants by the entirety. However, the lien was not recorded until August 23, 1988, several months after the conveyance to Marjorie. Therefore, whether the lien may be enforced against the property now owned by Marjorie turns on whether her interest falls within one of the four exceptions enumerated in § 6323. Since Marjorie clearly is neither a mechanic's lienor nor the holder of a security interest in the property, she is entitled to relief under § 6323(a) only if she qualifies as a purchaser or judgment lien creditor.

### A. *PURCHASER*

Section 6323 defines a purchaser as one who acquires an interest in property "for adequate and full consideration in money or money's worth." 26 U.S.C. § 6323(h)(6). The regulations promulgated pursuant to that section describe "[a]dequate and full consideration" as consideration that bears a "reasonable relationship to the true value of the interest in property acquired." 26 C.F.R. § 301.6323(h)–1(f)(3). The regulations also provide that "[a] relinquishment or promised relinquishment of ... marital rights is not a consideration in money or money's worth." 26 C.F.R. § 301.6323(h)–1(a)(3). The validity of the latter provision is, at least, debatable. Like the relinquishment of any other valuable legal right, a waiver of alimony has been recognized as consideration. *See, e.g., Law v. United States*, 83–1 US Tax Cas. (CCH) ¶ 13514, 51 A.F.T.R.2d (P–H) ¶ 83–1343 (N.D.Cal.1982). Moreover, there is nothing in the statute indicating that Congress intended to exclude a bona fide waiver of alimony from the definition of consideration or to delegate to the Treasury Department the authority to create such an exclusion.

However, this Court need not decide the validity of § 301.6323(h)–1(a)(3). As already noted, Marjorie's "waiver" of alimony was contingent upon Howard's payment of the tax lien on 143 Longview Drive. Thus, the property settlement agreement provides that Marjorie "shall waive alimony permanently *upon* the payment of the federal tax lien by the husband, and at *that point,* alimony will be permanently waived by her." (Emphasis added). To put it another way, Marjorie's "waiver" does not take effect unless and until Howard pays the lien. Because the lien remains unpaid, Marjorie has not yet relinquished her right to alimony and her "waiver" does not constitute "adequate and full consideration in money or money's worth." Accordingly, Marjorie is not a "purchaser" within the meaning of § 6323(h)(6).

### B. *JUDGMENT LIEN CREDITOR*

■ The regulations define a "judgment lien creditor" as a "person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money." 26 C.F.R. § 301.-6323(h)–1(g). They further provide that a judgment lien must be perfected and that perfection does not occur until "the property subject to the lien, and the amount of the lien are established." *Id.; see United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). In the case of real property, the regulations state:

> If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under such local law is not perfected with respect to real property until the time of such recordation or docketing.

26 C.F.R. § 301.6323(h)–1(g).

■ State law governs the determination as to whether a lien has been perfected. *Don King Productions, Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir.1991); *Air Power, Inc. v. United States*, 741 F.2d 53, 55 n. 2 (4th Cir.1984). However, the fact that a lien was perfected before a federal tax lien was recorded does not necessarily entitle it to priority over the federal tax lien. To enjoy priority, the previous lien also must be sufficiently choate under federal law. *New Brit-*

*ain, supra;* Treas. Regs. § 301.6323(h)-1(g); see *Air Power, Inc.,* 741 F.2d at 55 n. 2.

In this case, there is no evidence that Marjorie had any judgment for recovery of a sum certain from Howard before the federal tax lien was recorded. Marjorie did testify that Howard failed to make support payments required by the Family Court's interlocutory order. Moreover, it is true that, under Rhode Island law, Marjorie could have reduced those arrearages to judgment. R.I.Gen.Laws § 15-5-16.2(d) (1988). However, there is no indication that Marjorie ever did that. Even if she had, there is no indication that Marjorie perfected any lien by recording it in the records of land evidence as required by Rhode Island law. *See* R.I.Gen.Laws § 15-5-28(A) (1988). Thus, Marjorie is not a judgment lien creditor within the meaning of § 6323(h)(6).

■ The fact that the assessment against Howard was made while 143 Longview Drive was owned as tenants by the entirety does not prevent the assessment from establishing a federal tax lien against Howard's undivided one-half interest in the property. As already noted, under Rhode Island law, a creditor of one spouse may attach that spouse's interest in property owned as tenants by the entirety and may compel a sale of the property once the tenancy is terminated. *See In re Gibbons,* 459 A.2d 938, 940 (R.I.1983); *Cull v. Vadnais,* 122 R.I. 249, 406 A.2d 1241 (1979). In this case, any tenancy by the entirety between Marjorie and Howard was terminated by both the March, 1988, conveyance to Marjorie and by the final divorce decree entered on October 23, 1993, that dissolved their marriage.

In short, I find that the assessment made on November 25, 1985, created a federal tax lien against Howard's undivided one-half interest in 143 Longview Drive and any subsequent conveyances of that interest to Marjorie were subject to the lien. Because of that finding, it is unnecessary to address the government's alternative contention that foreclosure should be permitted on the ground that the deed to Marjorie was a fraudulent conveyance.

## II. *FORECLOSURE SALE*

■ The only remaining issue is whether a foreclosure sale should be ordered to satisfy the government's tax lien. IRC § 7403(c) states that "The court, . . . in all cases where a claim or interest of the United States . . . is established, *may* decree a sale of such property, by the proper officer of the court. . . ." (Emphasis added). The permissive language of the statute indicates that courts have some discretion to refuse to permit foreclosure. However, the Supreme Court has said that such discretion is very limited and should be exercised "rigorously and sparingly." *United States v. Rodgers,* 461 U.S. 677, 710–11, 103 S.Ct. 2132, 2151–52, 76 L.Ed.2d 236, 263–64 (1983). It has listed four factors to be considered in making that determination.

First, a court should consider the extent to which the government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. . . .

Second, a court should consider whether the third party with a nonliable separate interest in the property would, in the normal course of events, have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors.

. . . . .

Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in . . . practical undercompensation. . . .

Fourth, a court should consider the relative character and value of the nonliable and liable interests in the property. . . .

*Id.*

In this case, there is no practical way to sell only Howard's interest in 143 Longview Drive. The property is not susceptible to physical partition, and it is doubtful that prospective purchasers would have any interest in buying a partial interest in a residence occupied by Marjorie. Nor is there any evidence that Howard has other assets that could be seized to satisfy the claim underlying the tax lien.

In addition, it is difficult to see how Marjorie could have had "a legally recognized expectation" that the property would not be subject to a forced sale. Howard was indicted before execution of the deed creating the tenancy by the entirety. Marjorie, herself, concedes that she was aware, then, that the IRS was seeking to recover money from her husband. Furthermore, she could not have had any real expectation that the creation of a tenancy by the entirety would permanently shield the property from a forced sale because Rhode Island law permits lien creditors of one spouse to foreclose when the tenancy is terminated. Since the tenancy was created pursuant to divorce proceedings initiated by Marjorie, she must have contemplated eventual dissolution of the marriage and a concomitant termination of the tenancy by the entirety. Finally, she must be deemed to have recognized the risk of a forced sale in April of 1988 when the property was conveyed to her alone. Because of that conveyance, any expectation she previously might have had disappeared.

The most difficult of the *Rodgers* factors to apply is the one focusing on the adverse effect foreclosure is likely to have upon Marjorie. A foreclosure sale invariably has a detrimental effect on third parties having an interest in the property. That is particularly true when, as here, the property is the third party's residence. However, if those factors were sufficient to warrant denial of permission to foreclose, the foreclosure remedy provided by § 7403(c) effectively would be negated. Clearly, something more is required.

That "something more" was present in *United States v. Jensen*, 785 F.Supp. 922 (D.Utah 1992), a case relied upon by Marjorie. In *Jensen*, the court declined to permit immediate foreclosure with respect to a residence belonging to the wife of a delinquent taxpayer on the grounds that the wife was unemployed, had no assets and was suffering from terminal cancer that left her with a limited life expectancy. The court concluded that the prejudice suffered by the wife in being unable to replace the "roof over her head" greatly outweighed the prejudice the government would suffer by delaying foreclosure for the balance of the wife's lifetime.

This case does not present such extenuating circumstances. Marjorie is a college graduate and has been employed as a psychologist since 1982. Although she does have some health problems, they are far less serious to those alluded to in *Jensen*. Moreover, there was evidence that the mortgage on 143 Longview Drive was paid in full during 1991. Therefore, there would appear to be a very real possibility that financing could be obtained for the value of Howard's one-half interest thereby preventing a foreclosure sale.

To summarize, the facts of this case do not permit the Court to exercise the very limited discretion accorded by § 7403(c) by refusing to permit foreclosure. However, the Court will exercise that discretion for the limited purpose of mitigating the hardship to Marjorie by deferring the sale until August 1, 1994. That delay should afford Marjorie an opportunity to either obtain financing or arrange for a private sale on more favorable terms. Furthermore, such a short delay will not significantly prejudice the government's right to satisfy its lien. *See United States v. Young*, No. C–89–2065 MPH, 1992 U.S.Dist. LEXIS 7908, at * 11 (N.D.Cal. April 8, 1992) ("The court finds that discretion should be exercised under section 7403(c) and that a forced sale of the property * * * should not be ordered without first allowing defendant the opportunity to satisfy the obligation by some less draconian means."), *rev'd on other grounds*, No. 92–16007, 1993 WL 451349, 1993 U.S.App. Lexis 29044 (9th Cir. Nov. 1, 1993).

### CONCLUSION

For all of the foregoing reasons, the clerk is directed to enter judgment in favor of the United States of America against Howard A. Brynes in the amount of $12,838.47 plus interest, costs and penalties. In addition, judgment shall enter against Howard A. Brynes and Marjorie E. Brynes permitting foreclosure of the federal tax lien on 143 Longview Drive, Cranston, Rhode Island, provided that:

1. Such foreclosure sale shall not be conducted prior to August 1, 1994, and

2. The proceeds of such sale shall be distributed first to the United States of America in satisfaction of its federal tax lien against the undivided one-half interest of Howard A. Brynes, with the remainder of the proceeds to be distributed to Marjorie E. Brynes.

IT IS SO ORDERED.