WILLIAM A. F. TANNER *vs.* JAMES L. WHITNEY *et ux.*

JUNE 23, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

STEARNS, C. J. This is a suit in equity by complainant to have a conveyance of real estate made by James L. Whitney to the respondent Josie, his wife, set aside as in fraud of creditors. The cause was heard on bill, answer and oral proof and a final decree was entered denying the relief prayed for and dismissing the bill of complaint. The cause is in this court on complainant's appeal the reasons thereof being that the decree is against the law and the weight of the evidence.

The respondents were married in 1911 and lived together in a house owned by Mrs. Whitney. In 1912 she gave an undivided half interest in this house to her husband. Subsequently they jointly mortgaged and in 1924 sold the house and deposited the proceeds of the sale to their joint account in a bank. In 1927 James Whitney, who was employed as a foreman in a manufacturing establishment, lost his position. He then established a business connection with complainant, an insurance agent. Whitney was to act as a broker and to sell on commission different kinds of insurance for companies represented by complainant. Whitney billed his customers direct and reported the transactions to Tanner who credited him with his commissions and accounted to him for the net amount due him. In 1928 Whitney and his wife withdrew their joint bank deposit and with this money bought the real estate now the subject of controversy and built a house thereon. A part of the money required for this transaction was secured by a joint mortgage on the new estate.

In July, 1929, Whitney owed Tanner about $2,500. When urged to pay his indebtedness, Whitney told Tanner he was unable to pay because his customers were slow in paying accounts due to him. This excuse was not true as at that time a considerable part of these accounts had been collected and the money received and retained by Whitney. Thereafter, on July 20, Whitney, without any consideration, conveyed his interest in the house to his wife and had the deed recorded. This transfer disposed of all the property he owned and his only source of income was such commissions as he might earn in selling insurance for Tanner. Whitney in conversations with Tanner and with the stenographer in Tanner's office continued to refer to this property as "my house." Insurance policies on the house in 1929 and again in 1930 were taken out by Whitney through the agency of Tanner in the names of Whitney and his wife as joint owners. During the fall of 1930 Tanner continued to ask for a list of the unpaid accounts and finally, January 1, 1931, he

was given a statement. It then appeared that Whitney's indebtedness to Tanner was about $5,000 of which amount Whitney had collected $2,800 which he had not paid to Tanner. Whitney in November, 1930, offered to give a second mortgage on his house as security for his debt. Tanner agreed to take it and forego any interest. Whitney later reported that he could not give a mortgage as it would cost him too much, and also that his wife would not execute any such mortgage. Tanner first learned of the transfer made by Whitney to his wife January 2, 1931. The friendly relations between the two men came to an end and Tanner at once brought suit, attached the real estate of the Whitneys and on June 23, 1931, secured a judgment for $2,803.69. This bill of complaint was filed July 31, 1931.

Whitney denied any fraudulent intent in the transfer to his wife. He testified that the reason for the creation of the joint tenancy and the joint bank account was to avoid the necessity of probate proceedings in case of the death of either himself or his wife. Although he paid to his wife as rent a sum sufficient to pay the taxes, interest and other fixed charges on the property, he claimed he had no ownership in the property and it all really belonged to his wife; that as early as 1929 his wife had urged him to make the transfer because she feared he might be killed in an automobile accident and she would be put to the trouble and expense of probate proceedings; that in the summer of 1930 he did have a slight accident while riding in an automobile and for that reason he made the transfer to his wife as she had before requested. His reason for renewing his insurance for himself and his wife as joint owners was that it was due merely to neglect on his part, although he admitted in cross-examination he knew he could not collect insurance on property which he did not own.

The reasons stated for making the transfer of his property are frivolous and unworthy of serious consideration. Assuming—as is probably the fact—that most of the money paid by respondents for this property came originally from

Mrs. Whitney, nevertheless Mr. Whitney by the free and voluntary act of his wife was a joint owner of the family real estate and of the bank account from 1912 to 1929.

The trial justice was not satisfied that there was an actual intent to defraud and also held that complainant was guilty of laches in attacking the conveyance. Mr. Whitney probably hoped to be able to pay his debt eventually. There is only one conclusion, however, to be drawn from his conduct, namely, that his intention was that the property he had received from his wife should not be applied in payment of his debts. As has often been said, a debtor must be just before he is generous.

The vital question is, does the conveyance deprive the creditor of a right which would be legally effective had the conveyance not been made? *Salzenstein* v. *Hettrick,* 105 Ill. App. 99. Bigelow in his work on fraudulent conveyances (pp. 78, 79) states the rule to be that the question whether a gift by a debtor is to be regarded as made with intent to defraud his creditors is now generally considered to turn upon whether the debtor was at the time in a situation to make the gift in justice to his creditors, *i. e.,* without delaying them in the enforcement of their rights.

There is no place for question in such cases clearly of any intention to delay or defraud in the sense of any actual purpose in the mind. The validity of the conveyance is to be determined not by the debtor's intention, even if honest, but by the effect on the creditor's right of recovery. So judged, this conveyance is in violation of the statute of fraudulent conveyances (G. L. 1923, C. 297, s. 1) and consequently is void as against creditors and should be set aside. See *Thornley Supply Co.* v. *Madigan,* 51 R. I. 310.

Complainant is not guilty of laches. In the circumstances, the recording of the deed of transfer can not be held to be notice to complainant of the transfer, as the respondent debtor by his conduct purposely misled his creditor as to the change in ownership. At once, on discovery of the facts, the property was attached and the creditor's

claim was reduced to judgment and this proceeding in equity was begun to set aside the deed. The debtor was unable to pay his debts and it was not necessary for the creditor to have an execution returned unsatisfied. *Mc-Kenna* v. *Crowley,* 16 R. I. 364; *First National Bank of Shreveport* v. *Randall,* 20 R. I. 319. In legal significance, laches is not mere delay, but delay that works a disadvantage to another. *Chase* v. *Chase,* 20 R. I. 202; *Hatton* v. *Howard Braiding Co.,* 47 R. I. 47. Respondents have suffered no injury from any delay in the instant cause. For the reasons stated the decree of the Superior Court is reversed.

On June 28, 1932, the parties may present a form of decree in accordance with this opinion.

*Charles H. Eden,* for complainant.

*Everard Appleton,* for respondents.