**UNITED STATES of America**
v.
**Genevieve RUSSELL et al.**
**Civ. A. No. 1644.**

United States District Court
D. Rhode Island.
June 11, 1959.

See also 143 F.Supp. 209.

4. See Note 1.

872

Joseph Mainelli, U. S. Atty., Samuel S. Tanzi, Asst. U. S. Atty., Providence, R. I., for plaintiff.

Christopher J. Brennan, Providence, R. I., for defendants.

DAY, District Judge.

In this action the United States seeks a determination by this Court that the defendant, Genevieve Russell, and her co-defendant and husband, Floyd Russell, are liable as transferees to the extent of the value of certain real estate particularly described in the complaint and situated at 169 Woodbine Street in the City of Pawtucket, Rhode Island, for taxes due and owing from Annie Nasif and John Nasif, as alleged in the Government's amended complaint.

The Government further prays that the lien of the United States be established and enforced against said parcel of real estate; that the lien be foreclosed; that the property be ordered sold; and that the proceeds realized from such sale be ordered paid to the United States for application upon the tax indebtedness due from Annie and John Nasif, as alleged in the amended complaint.

The amended complaint is a very lengthy document comprising some fifteen separate paragraphs. Briefly summarized, the allegations are to the effect that one John Nasif and Annie Nasif were indebted on August 1, 1948 to the United States of America for taxes in the following amounts: John and Annie Nasif, $14,574.38; Annie Nasif, $18,-331.98; and that on September 22, 1950, the plaintiff was a creditor of Annie Nasif in the amount of $18,331.98 plus interest, and was also a creditor of Annie Nasif and John Nasif in the amount of $14,574.38 plus interest, for delinquent income taxes due for the years 1943, 1944, 1945, and 1946, although said income taxes had not then been formally assessed.

The complaint further alleges that on and prior to September 22, 1950, Annie Nasif and John Nasif were the owners of several parcels of real estate located in the City of Pawtucket, and that the said Annie Nasif in her own name was the owner of a parcel of real estate located at 169 Woodbine Street in said city; that on September 22, 1950, the said Annie Nasif conveyed by warranty deed to the defendant, Genevieve Russell, said parcel of real estate located at 169 Woodbine Street; that the said Annie Nasif and John Nasif were either insolvent at the time the conveyance was made or the making of the conveyance

rendered them insolvent and unable to pay their tax indebtedness to the United States; that the conveyance was made subject to a mortgage of record held by the Pawtucket Institution for Savings of Pawtucket, Rhode Island; and that the plaintiff is informed and believes and upon information and belief alleges that the conveyance of the parcel of real estate by Annie Nasif to Genevieve Russell was made without full or adequate consideration for the purpose of avoiding and evading the payment of her federal taxes and was made in fraud of the rights of the United States, which at the time was her unpaid creditor.

Other allegations of the complaint relate to the filing of a notice of a tax lien on August 6, 1951 against Annie Nasif and John Nasif in the office of the City Clerk, City of Pawtucket; and to a demand made by the Director of Internal Revenue on Annie Nasif and John Nasif for the payment of those taxes.

It is further alleged in the complaint that a timely assessment was made against the defendants as transferees on July 30, 1953. There are further allegations to the effect that real estate, not including the parcel located at 169 Woodbine Street, Pawtucket, Rhode Island, was sold by the mortgagee under the power of sale contained in the mortgage held by the mortgagee; and that the parcel located at 169 Woodbine Street was not so sold although covered by the mortgage and subject to sale under the power of sale contained therein in the event of a default in its terms.

The complaint further alleges that a jeopardy assessment was timely made against Genevieve Russell and her husband, Floyd W. Russell, as transferees of Annie Nasif and John Nasif, in the amount of $9,780.34, on the basis of their transferee liability for income taxes timely assessed against Annie Nasif and John Nasif on May 7, 1951.

Reference is also made in the complaint to an order entered by this Court in Civil Action No. 1320, entitled "United States v. John Nasif," wherein it was declared that Annie Nasif was indebted to the plaintiff for $21,493.61 and that Annie Nasif and John Nasif were indebted to the plaintiff for $17,088.49, both amounts including interest up to the date of entry of the order, to wit, March 30, 1954.

It is further alleged therein that the excess realized at the sale on the foreclosure of the mortgage, amounting to the sum of $4,081.37, was applied to the reduction of the indebtedness of Annie Nasif and John Nasif. There is a further allegation that an execution was issued out of this Court in that action, credit being noted for the surplus realized from the sale under the mortgage; and that, specifically, credit was given to Annie Nasif, individually, and to John Nasif and Annie Nasif, jointly, on the amounts found to be due from each of them as taxes to the United States of America; and, further, that the execution issued on said judgment, apart from said partial credit, remains unsatisfied.

It will be seen from the allegations of the complaint, briefly summarized as I have undertaken to do, that it predicates the Government's right to have it determined by this Court that the Government has a valid lien on the real estate at 169 Woodbine Street in the City of Pawtucket and an incidental right to foreclose that lien on the ground that the transfer of the Woodbine Street property by Annie Nasif to the defendant, Genevieve Russell, was without consideration and was made with the intent to hinder, delay, and defraud the United States in the collection of its tax claims against Annie Nasif; and, further, that the grantor, Annie Nasif, was insolvent at the time of the conveyance on September 22, 1950, or was rendered insolvent by said conveyance.

██ It is clearly the general rule that where the Government seeks to impose transferee liability on a transferee of property, it is essential that the Government establish that the taxpayer who made the transfer is rendered insolvent by reason of the transfer and unable to pay the tax or taxes due and owing by him at the time of such transfer. The

cases to this effect are many in number. The Court need cite only a few for this proposition: Wright v. Commissioner of Internal Revenue, 28 B.T.A. 543; United States v. Armstrong, 8 Cir., 26 F.2d 227; Scott v. Commissioner of Internal Revenue, 8 Cir., 117 F.2d 36; United States v. Cain, D.C.Miss., 113 F.Supp. 304. For a general statement of this rule see Mertens, Law of Federal Income Taxation, §§ 53.04 and 53.26.

The Government here not only claims that the transaction or the conveyance was made when the taxpayer was insolvent or that the taxpayer was rendered insolvent thereby, but also that the transferee, Genevieve Russell, one of the defendants in this action, took said conveyance without the payment of any consideration therefor.

At the outset, it seems to the Court that in evaluating the testimony in this case I must not lose sight of the fact that the transactions in so far as the loans between the defendant and her mother are concerned took place upwards of thirteen to fifteen years ago. I think I would be far from human if I were to expect of any witness a precise, definite recollection of the source of a particular deposit in a bank account made that many years ago.

The defendant contends that she made loans to her mother over a period of three years; and that these loans were finally recognized by the mother by way of a promissory note to the defendant in the sum of $6,300. This note was given in September of 1945. I am frank to say that the testimony of the defendant as to the form and contents of the note was not as clear as it might well have been. As I recall her testimony, she described the note as being typewritten and signed by her mother. No additional light was given as to whether the note bore interest or as to when it was payable. She further testified that in September, 1950—when the conveyance was made to her of this property at a value of approximately $6,000—she surrendered this note to her mother in exchange for the conveyance.

I am satisfied that the transaction took place in the office of Mr. John O'Neill. I am further satisfied that Mr. O'Neill was engaged by Mrs. Nasif to prepare the deed; that the revenue stamps appearing thereon were cancelled by Mr. O'Neill; and that the deed was recorded by him with the instructions that it be mailed to the defendant when it was recorded.

It is true that some time previous to 1950 the income tax returns of Annie Nasif, of her husband, John Nasif, and apparently of a brother of the defendant, Elias Nasif, were under scrutiny and investigation by the Internal Revenue Service. That fact is a suspicious circumstance surrounding the execution of the deed and conveyance of this property, but this Court cannot decide cases on suspicion alone. One can suspect the existence of a fact or condition; in fact, one's suspicions may be strong—but suspicions do not constitute legal evidence.

There was one significant bit of testimony here which frankly I have no reason to disbelieve, and that significant bit of testimony was given by Mrs. Russell, who said that at the conference in 1949 at New Haven she publicly stated, with the conferees present, that her mother was then indebted to her in the sum of $6,300. She further testified that either a Mr. Sullivan or a Mr. O'Sullivan, one of the conferees, advised her and her mother that under the circumstances they should engage counsel. Mr. Katz was apparently present at that conference. There has been no denial of the testimony of Mrs. Russell with respect to that incident. The statement was made by her apparently in the presence of her mother and in the presence of the conferees.

I am satisfied both from the testimony of Mrs. Russell and the memoranda of the interviews or the conferences, or whatever they may be termed, that loans were in fact made by this defendant to her mother and also to her brother during the years 1943, 1944, and 1945. The Government has not satisfied me, however, as to what part of those loans to

her mother were in fact repaid or, in the alternative, what part of them, if any, had not been paid in September, 1950.

While the testimony of Mrs. Russell is vague and not entirely satisfactory, I do feel that in good conscience I must consider how many years have elapsed since these transactions occurred. And the contention here made by the Government that this conveyance was made with intent to defraud is one that requires satisfactory proof.

Under the statute dealing with fraudulent conveyances in Rhode Island I recognize that there need not be an actual intent to hinder, delay or defraud existing in the mind of the grantor at the time of the conveyance. I am satisfied that the situations presented in Tanner v. Whitney, 52 R.I. 391, 161 A. 122, and Savoie v. Pion, 52 R.I. 422, 161 A. 219, were not present here in September, 1950. A careful reading of the opinions in both of those cases satisfies me that in each instance the debtor, who was charged with having made a fraudulent conveyance of his property, stripped himself of all of his assets at the time he made the conveyance, leaving himself with nothing to satisfy the claims of his creditors. It is obvious to me from a reading of those opinions that the grantor in each instance was rendered insolvent by the transfers in question.

In this case I am frank to say that apart from the failure of the Government to establish that the defendant, Genevieve Russell, did not pay any consideration for this conveyance, I am further satisfied that there is no evidence which would warrant me in finding that on September 22, 1950 Annie Nasif was either insolvent or rendered insolvent by this conveyance. In so far as appears from the allegations of the complaint, it may well be that Annie Nasif was insolvent on March 30, 1954, or conceivably in 1953 when the Pawtucket Institution for Savings foreclosed its mortgage on the properties subject to that mortgage, save the Woodbine Street property; but the fact that she may have been—and I say "may have been" advisedly—insolvent in 1954 or in 1953 is not evidence and cannot be considered by me as evidence of her being either insolvent when the conveyance was made or rendered insolvent by reason of the conveyance.

Those being my conclusions and findings of fact, it follows that the Government having failed to establish (1) that the conveyance was made without adequate consideration, and (2) that Annie Nasif was either insolvent on September 22, 1950, or rendered insolvent by the conveyance which the Government seeks to set aside, judgment must be entered in favor of the defendant. An order will be prepared and entered for judgment in favor of the defendant.