324 A.2d 325.

W. Paul Oury *vs.* Domenic Annotti *et ux.*

JULY 30, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. On November 4, 1960, the defendant Domenic Annotti (Domenic) conveyed a parcel of real estate located in Providence (the subject property) to his wife Anita, also a defendant. The deed recited that "[t]he consideration is such that no stamps are required," and was not recorded until January 19, 1961. It is that conveyance which the plaintiff seeks to set aside in this civil action on the ground that it was made in fraud of creditors and therefore void under G. L. 1956 (1969 Reenactment) §6-16-1. The case was heard in two stages before a Superior Court justice sitting without a jury, and it resulted in a judgment for the defendants from which the plaintiff has appealed.[1]

At the initial hearing on February 24, 1971, it appeared that shortly before the November 4, 1960 conveyance to his wife, Domenic borrowed $10,000 from plaintiff. That indebtedness was evidenced by a promissory note dated September 6, 1960. Although that instrument recited that the loan was secured by a mortgage on real estate, neither the mortgage nor the real estate was identified. Indeed, what little evidence there was at the first stage of the trial came in the form of either exhibits or testimony from Anita, who was the only witness and who was called by plaintiff under the adverse witness statute. The exhibits included the note for $10,000, an exemplified copy of the default judgment which plaintiff obtained against Domenic

---

[1]While the action was pending in the Superior Court, (1) Domenic died, his death was suggested upon the record, administration was taken out on his estate, and the plaintiff filed a claim therein as a judgment creditor; (2) the plaintiff died, his death, too, was suggested upon the record, and the executrix of his estate was substituted as the plaintiff; and (3) the executrix died, her death was suggested upon the record, and her estate's administrator, *d.b.n.c.t.a.*, was substituted as the plaintiff. References are, where appropriate, to the original parties.

on that note on September 27, 1966, and a copy of the deed of the subject property from Domenic to Anita. In addition, there was Anita's testimony. She had little or no knowledge of her husband's affairs, admitted that there was no consideration for the husband's conveyance to her, and made no attempt to tie that conveyance to the approximately $7,000 which her husband then owed her for monies borrowed from time to time.

On the basis of this evidence, the trial justice concluded that this interspousal conveyance, while not motivated by an actual intent on the part of Domenic to defraud his creditors, appeared to involve his sole asset and therefore operated to deprive his creditors of a right which would have been legally effective had that conveyance not been made.[2] In those circumstances, the trial justice said, the transfer was obnoxious to the law against fraudulent conveyances. He went on to say, however, that entry of final judgment should be deferred pending an accounting between the parties of their respective rights and interests in the subject property.

Following the announcement of that decision—on which no judgment was ever entered—defendants engaged new counsel. On May 26, 1971, he filed a "Motion For New Trial, To Amend Findings Of Fact And/Or To Alter Or

---

[2]In this state, a determination that a conveyance made without consideration is fraudulent as to creditors does not require proof of actual fraud, *Tanner v. Whitney*, 52 R. I. 391, 394, 161 A. 122, 123-24 (1932), but depends upon whether the debtor on the critical date of conveyance was so situated that the making of the gift hindered or delayed his creditors in the enforcement of their rights. *Warwick Municipal Employees Credit Union v. Higham*, 106 R. I. 363, 368, 259 A.2d 852, 855 (1969). Proof, however, that a conveyance to a wife was of *all* her husband's property and was for a nominal consideration, makes out a prima facie case that it was made with the intent or purpose to hinder, delay or defraud creditors. *Savoie v. Pion*, 52 R. I. 422, 161 A. 219 (1932); *Carroll v. Salisbury*, 28 R. I. 16, 19, 65 A. 274, 275 (1906).

Amend Judgment."[3]    Attached to that motion was an affidavit referring to records of real estate transactions which purportedly showed that Domenic's assets consisted of substantially more than the subject property at the time it was conveyed and that he had given plaintiff a mortgage interest as security for the loan.

That motion was heard on June 17, 1971.  Following arguments of counsel, the trial justice stated that at the earlier hearing the question of what security, if any, had been given for Domenic's promissory note had not been pursued, that the limited evidence offered at that hearing tended to show that the subject property was Domenic's sole substantial asset, and that its transfer to his wife without consideration had apparently made it "substantially impossible" for Domenic to meet his obligations to plaintiff.  He then went on to observe that the nature of the mortgage interest securing plaintiff's loan, and Domenic's possible ownership of other assets at the critical moment, were matters which might cast doubt upon the validity of his earlier conclusion that Domenic's conveyance to his wife was fraudulent.  While the trial justice noted that much of the evidence proposed to be presented at a new hearing appeared to be part of the public record and thus could have been produced by defendants at the first hearing, he excused the failure to present that evidence because Domenic was then deceased and therefore

---

[3]That motion, in pertinent portion, reads as follows:

"Now comes the defendant pursuant to Rule 59(a) and 59(c) Rhode Island Rules of Civil Procedure and pursuant to Rule 52 Rhode Island Rules of Civil Procedure and moves this Court for a new trial and/or to re-open and vacate the judgment previously entered and to alter its judgment and direct a judgment in favor of the defendant and for her reasons states:

"1. The defendant has discovered new evidence which would substantially effect [sic] the judgment heretofore entered by this Honorable Court."

unavailable as a witness, and Anita apparently was unaware of the details of the transactions. He concluded that in these circumstances, justice required him to "reopen the matter and hear the new evidence," and accordingly he granted defendants' motion, characterizing it as one to reopen.

The second stage of hearings in the case began on September 25, 1972. Documents evidencing Domenic's ownership of other assets on the critical date were then introduced, and three witnesses were produced whose testimony essentially amplified and explained the documentary evidence. Basically, the following appears.

Domenic acquired the subject property in 1950, but did not record his interest therein until January 19, 1961, when he also recorded the challenged November 4, 1960 conveyance of that property to his wife. Domenic also owned property in the town of Narragansett, acquired by a deed dated April 30, 1947, but not recorded until April 4, 1961. Although that property was then unencumbered, it was mortgaged in November 1961 to a bank for $5,000. Record title to another Narragansett lot was also in Domenic's name on November 4, 1960, but he had earlier conveyed it to a stranger.

It was also developed at this hearing that Domenic was the holder of a $15,000 second mortgage on the Uptown Theatre property in Providence, and that it was this second mortgage which, although unidentified at the first hearing, was the security transferred by Domenic to plaintiff for the $10,000 loan. While there was no direct evidence of the value of that mortgage interest, there was testimony that in 1960 the owner of the property borrowed $40,000 from a company engaged in the mortgage financing business, which took a first mortgage on the property as security for the loan. There was also testimony that in 1962 the first mortgagee, by then also the holder of the

second mortgage, sold the property for $20,000. In what the trial justice described as a "guarded" opinion, the real estate broker handling that sale testified that the property's fair market value had not changed significantly since 1960.

On the basis of the foregoing evidence, the trial justice found that on the critical date of the conveyance to his wife, Domenic had substantial assets in addition to the subject property, and that the conveyance of that property did not work an injustice upon his creditors. Accordingly, he vacated his prior decision and ordered that judgment be entered for defendants.

In this appeal, plaintiff assumes that the so-called motion to reopen was one for a new trial grounded upon newly discovered evidence. He argues that defendants failed to establish that the evidence upon which they relied in their claim to reopen was unavailable at the first stage of the trial, and, therefore, that no ground existed for reopening under *Colvin* v. *Goldenberg*, 108 R. I. 198, 273 A.2d 663 (1971).[4]

The plaintiff's contention falters, however, on his erroneous assumption that the trial justice should have applied the relatively strict principles which control when, following the entry of judgment, a party moves for a new trial on the ground of newly discovered evidence pursuant to Super. R. Civ. P. 59(a)(2) or 60(b)(2). Judgment had not entered here, and no specific rule covers this exact situation. In an attempt to comply with the mandate of Fed. R. Civ. P. 1 to construe the rules in order "to secure the just, speedy, and inexpensive determination of every

---

[4]In *Colvin* we held that a new trial may be granted in a nonjury civil action only if the trial justice finds a manifest error of law in the judgment previously entered, or if he is satisfied that newly discovered, material evidence was not available at the first trial. Neither of those preconditions existed here.

action," the federal courts have resorted to a cross-breeding or "cannibalization" of Rules 59 and 60, and in comparable situations have allowed motions to reopen. *Caracci* v. *Brother Int'l Sewing Machine Corp.*, 222 F.Supp. 769, 771 (E.D. La. 1963), *aff'd*, 341 F.2d 377 (5th Cir. 1965); 6A Moore, *Federal Practice* ¶59.04[13] (2d ed. 1974).

We follow that practice, fully recognizing that a motion to reopen after the close of the evidence, but prior to the entry of judgment, bears similarities to the motion for a new trial on the ground of newly discovered evidence. We are likewise aware that the differences between the two narrow as a case approaches the entry of judgment. Nonetheless, an application to reopen prior to entry of judgment is essentially addressed to a trial justice's sound judicial discretion, particularly in a nonjury case, and, absent an abuse thereof, an exercise of that discretion will not be disturbed on review. *See Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U. S. 321, 331-32, 91 S.Ct. 795, 802-03, 28 L.Ed.2d 77, 88 (1971); *Safeway System, Inc.* v. *Manuel Bros.*, 102 R. I. 136, 146, 228 A.2d 851, 857 (1967).

True, in the case *sub judice*, defendants did not move to reopen until after the trial justice had announced his decision and had revealed what in his judgment were the inadequacies of defendants' case. But when the trial justice acted on that motion, he had before him the accompanying affidavit suggesting documents which could fill the gaps, and he also knew that Domenic's death and Anita's lack of knowledge had made it difficult at the initial stage for defendants to present a proper case. In the light of these circumstances, we cannot say that the trial justice abused his discretion in allowing defendants to reopen upon pre-

sentation of evidence falling short of the requirements of Rules 59(a)(2) or 60(b)(2).[5]

The next and only other question is whether, upon a consideration of the evidence presented at both stages, Domenic's conveyance to his wife was fraudulent and therefore void under the law against fraudulent conveyances. That depends, of course, upon whether Domenic, when he made the gift, worked an injustice upon plaintiff by delaying, hindering or otherwise adversely affecting him in the enforcement of his right of recovery. Note 2 *supra.* For that to be so, Domenic would have had to have been insolvent at the critical moment or made so by virtue of having conveyed the subject property to his wife. *Harriss* v. *Orr,* 65 R. I. 369, 379, 14 A.2d 674, 679 (1940).

Here, the trial justice concluded that neither of these conditions obtained. In so concluding, he considered it significant that plaintiff had taken defendant's note in reliance upon the security of a second mortgage on the Uptown Theatre property. True, that property had sold in 1962 for $20,000, and the testimony of the broker who handled the sale was that its fair market value for a considerable time preceding that sale was probably no greater. But offsetting that testimony was the evidence that a mortgage loan of $40,000 on that property had been made by a lending institution late in March 1960, about five months prior to the loan and about seven months before

---

[5]While it has been said that reopening a case once it has been closed is "a pernicious practice," *Reconstruction Finance Corp.* v. *Commercial Union of America Corp.,* 123 F.Supp. 748, 750 (S.D.N.Y. 1954), there is no hard and fast rule against it, and reopening was allowed in a jury-waived case even though both sides had rested and the trial justice had filed an opinion stating that the prosecution had failed to establish certain necessary facts by the best evidence available. *Haugen* v. *United States,* 153 F.2d 850, 851-52 (9th Cir. 1946); *see also United States* v. *Colangelo,* 27 F.Supp. 921 (E.D.N.Y. 1939).

the conveyance to Anita. That transaction, the trial justice felt, warranted a reasonable inference that there had been "substantial changes of value in a relatively brief time in respect to the Uptown Theatre property."

In his judgment, that inference overrode the real estate broker's "guarded" testimony with respect to the 1960 fair market value of the subject property. Moreover, he also found that Domenic's Narragansett property, on whose security a bank had subsequently advanced $5,000, had at least a substantial value at the time of the conveyance of the subject property. On the basis of those findings, he concluded that plaintiff had failed to sustain his burden under *Ducharme* v. *Champagne,* 110 R. I. 270, 274-75, 292 A.2d 224, 226 (1972), of proving that he was in any way delayed in the enforcement of his rights by Domenic's conveyance of the subject property to Anita.

The plaintiff has failed to establish that in arriving at his conclusion the trial justice either overlooked or misconceived material evidence or was otherwise clearly wrong, or that on the facts as thus found by him he incorrectly applied the law. In those circumstances, of course, we will not disturb his decision.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

Mr. Chief Justice Roberts did not participate.

*McOsker and Isserlis, Milton L. Isserlis, Bernard F. McSally, Edward E. Dillon, Jr.,* for plaintiff.

*Ralph J. Gonnella,* for defendants.