**JOSEPH FARRINGTON, Plaintiff**

v.

**LUCY F. FARRINGTON, Defendant**

Family No. D281/84

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

May 15, 1985

JOHN L. MADURO, ESQ., St. Thomas, V.I., *for plaintiff*

JOHN J. MAHON, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The court is required to determine whether it may reopen a case to take additional testimony after an oral decision is rendered but before judgment is entered. The court decides that it may and should do so.

### I.

The court on January 11, 1985 granted the parties a divorce. It also determined their interests in the marital homestead, relying primarily upon the parties' representations as to the value of the homestead and the costs of renovations to it.

Both parties agreed that the homestead was worth $25,000. They assigned it this value in their sworn financial statements and in their testimony. As a result, the court accepted this valuation.

It also credited Mrs. Farrington with $5,000 she had spent on renovations to the property and then divided the remaining $20,000 equity evenly between the parties. The court next determined that Mrs. Farrington was entitled to a lump sum alimony award of $5,000 and deducted this sum from Mr. Farrington's share of the home. Finally, the court ordered that Mrs. Farrington should be granted an option to buy out her husband's interest in the homestead for $5,000. After the court's oral decision, but before judgment was entered, Mr. Farrington on January 31, 1985 filed a motion for the court to reconsider its determination of the parties' interests in the property.

The motion raises two issues. First, Mr. Farrington alleges that his wife never substantiated her claimed expenditures for renovations. Second, he now claims that the property is worth $48,000 and that to allow Mrs. Farrington to buy out his interest for $5,000 would be inequitable. As a result, he asks the court to order an independent appraisal of the property and to consider new testimony regarding its value.

### II.

■ Neither the Federal Rules of Civil Procedure applicable to this court nor the rules of this court expressly provide for either motions to reconsider or motions to reopen. Nor can the motion be

treated as one for a new trial or for relief from a judgment under F.R. Civ. P. 59 or 60, because it was made before a judgment was entered in accordance with the rules. Nevertheless, the court will consider the motion because "[e]ven though there is no express statutory provision of substantive law specifically allowing the reopening of a trial, the court finds that such has become a rule of law supplied by the jurisprudence. It appears to be a cannibalization of those qualities found in Rules 59 and 60 . . . geared by the philosophy of Rule 1, that is, the '*just*, speedy, and inexpensive determination of every action.'" Caracci v. Brother International Sewing Machine Corp. of La., 222 F.Supp. 769, 771 (E.D. La. 1963), aff'd, 341 F.2d 377 (5th Cir. 1965) (emphasis by the court); Oury v. Annotti, 324 A.2d 325, 328–29 (R.I. 1974); see also U.S. v. Colangelo, 27 F.Supp. 921 (E.D.N.Y. 1939); U.S. v. Parisi, 27 F.Supp. 922 (E.D.N.Y. 1939); Schick Dry Shaver v. General Shaver Corp., 26 F.Supp. 190 (D. Conn. 1938).

## III.

The plaintiff contests the court's finding with respect to renovations by Mrs. Farrington, contending that although she produced receipts at trial, she neglected to offer them into evidence. Without this corroborating evidence, the plaintiff contends that Kirby v. Kirby, 14 V.I. 601 (Terr. Ct. St. Croix 1978), prohibits the court from finding Mrs. Farrington's testimony credible as to these expenses.

Kirby, although persuasive, is not controlling. Moreover, this case is distinguishable from Kirby. The parties in Kirby offered contradictory testimony as to the extent of their contributions to the construction of their homestead. In determining that the husband's testimony was not credible, the court in Kirby not only relied on the fact that it was uncorroborated, but also pointed to the strong contradictory testimony of the wife and her brother. The court also noted that nearly a third of the construction costs were paid by a mortgage loan, all the payments of which the parties agreed the wife had made.

Here, however, Mr. Farrington admitted that his wife paid for renovations to their home. While he said he did not know how much she had paid, he was willing to accept whatever figures she presented to the court.[1] Although Mrs. Farrington did not offer her

---

[1] During cross examination, Mr. Farrington was asked:
Q. And you said before that your wife put in more money; is that correct?

receipts for the renovations into evidence, she testified that they amounted to approximately $5,700.00.[2] Mr. Farrington presented nothing to contradict this claim. In fact, his attorney did not even cross-examine Mrs. Farrington about it. Under these circumstances, the court believes Mrs. Farrington's testimony was sufficiently credible for it to determine that she spent approximately $5,000 renovating the house.

## IV.

■ To support his second contention regarding the undervaluation of the parties' homestead, Mr. Farrington has submitted an appraisal dated January 21, 1985 that values the homestead at

---

A. Yes, I am going to be honest.

Q. ... do you have any idea how much she spent?

A. No, I could not tell you.

Q. If I were to tell you it was at least $4,000.00, would that be a correct figure?

A. Attorney, I would not say it was fair or it was unfair. As long as she has the figures to present to the court, that is fine with me.

Excerpt of transcript, January 11, 1985, pp. 2–3

[2] In her direct examination, she was asked:

Q. Mrs. Farrington, I am going to show you a group of bills and receipts that has been collectively marked as exhibit number two, and ask you if you could identify them?

A. Yes.

Q. What are they?

A. Receipts for labor. I spent $2,270.00.

Q. You spent $2,270.00 on labor. What is the next one?

A. The next one is $474.30 that is for material.

Q. Go ahead.

A. The other one is $677.00, also for materials.

Q. How much is it?

A. $6.77. I am sorry.

THE COURT: $6.00?

THE WITNESS: Yes.

THE COURT: The other one is $331.08?

ATTORNEY MAHON: $351.00 isn't it?

THE WITNESS: Yes, I can't see too well. The other one is $139.07. This one here is $935.63, and this one is $161.15, $142.06, $159.74 and this last one is $46.19.

BY ATTORNEY MAHON:

Q. Were they for the downstairs apartment?

A. Yes, sir, for the downstairs.

Q. In addition to those, were there any other costs?

A. Yes, I do not have the receipts for the face basin in the bathroom, and also for the toilet seats and I had some other receipts. They just disappeared.

Q. Can you give the court any estimate as to what additional money you spent to improve the property.

A. It was about $5,700.00, and he knew about it ...

Excerpt of transcript, January 11, 1985 pp. 3–4

$48,000. The court does not know of any reason why by due diligence this appraisal could not have been completed in time to be presented at trial. Nor has the plaintiff presented any reason. Nevertheless, the court notes that when a motion to reopen to take new testimony is made before judgment formally is entered, the motion need not meet the stringent due diligence standards that Rules 59 and 60 require. Oury v. Annotti, supra. The court, therefore, believes the appraisal raises doubts as to the equity of the court's resolution of a most fundamental issue in this case.

██ Accordingly, in fairness to the parties, the court will vacate that portion of its January 11, 1985 oral order that valued and disposed of the homestead and will take further evidence from either party or their witnesses as to the homestead's value. The court, however, will not order an independent appraisal as no showing has been made that an independent appraisal at this stage either is warranted or is necessary.