DECISION
The motion before the court is one for summary judgment. Plaintiff Premier Capital, Inc. ("Creditor") alleges that the Defendants, Jane Grosvenor Hand ("Debtor") and her husband, Gilbert C. Hand, violated the Rhode Island Uniform Fraudulent Transfer Act ("UFTA"), G.L. 1956 §6-16-1, et seq., by transferring approximately $200,000 of the Debtor's inheritance into a joint bank account and thereafter into real property, located in Kent County, Rhode Island and held by the couple as a tenancy by the entirety. In Count I of its Complaint, the Creditor seeks to invalidate the conveyance of the Debtor's inheritance into the joint bank account, whereas, in Count II of its Complaint, the Creditor seeks to invalidate the Debtor's creation of a tenancy by the entirety. The narrow issue presented to the Court in this Motion for Summary Judgment on Count II of the Creditor's Complaint is whether by funneling her inheritance into a tenancy by the entirety, the Debtor made a transfer without receiving a reasonably equivalent value in exchange, and the Debtor was insolvent at the time of the transfer or became insolvent as a result of it.
The Court holds that there is no material issue of fact as to whether Defendants did violate the UFTA, as creation of the tenancy in the entirety constitutes a "transfer" under the statute, and that the transfer was made for no reasonably equivalent value when the Debtor was insolvent. Therefore, the Court invalidates the transfer, thereby reducing the Defendants' tenancy by the entirety interest in their property into a tenancy in common. The Creditor may now attach the Debtor's rights in this property to satisfy its judgment.
 FACTS AND TRAVEL
On April 5, 1990, Debtor and her husband took out an equity line of credit for $55,000 from the Attleboro Pawtucket Savings Bank secured by their real property located at 68 Phillips Hill Road in Coventry, Rhode Island. Subsequently, the Debtor and her husband defaulted on the loan and the bank initiated a suit against them. See Federal DepositionInsurance Corporation v. Gilbert C. Hand and Jane Grosvenor Hand, C.A. No. PC 92-5805. While that suit was pending, the Creditor acquired the note and was substituted on August 12, 2003, by stipulation of the parties, as plaintiff in the matter. Shortly thereafter, Mr. Hand filed for bankruptcy and received a discharge that encompassed the debt in question; however, the Debtor did not join her husband in the bankruptcy filing.
On July 21, 1993, a Judgment entered against Debtor in the amount of $57,239.05 plus interests, costs and attorneys' fees. The Creditor thereafter pursued unsuccessful efforts to collect the judgment owed by Debtor.
During a deposition on November 17, 2003, the Creditor learned that the Debtor was the contingent beneficiary of multiple trusts containing millions of dollars, and further, that her mother, Lucy Pitts Grosvenor, had recently passed away, leaving an estate pending in the Probate Court of North Kingstown. See C.A. No. 5873. When the Debtor's deposition was reconvened on May 10, 2005, the Creditor learned that the Debtor had received from her mother's estate, as proceeds from the sale of certain real estate, approximately $300,000, along with an undisclosed amount of money from the William Grosvenor, Jr. Trust, Fleet National Bank, Account No. 3680902. (J. Hand Dep., 05/10/05, at 15.) The Debtor admits that she deposited these funds into a joint checking account with a Connecticut branch of the Chelsea Groton Bank. Id. The Debtor further acknowledges that she used $200,000 of this money to purchase real estate in Warwick, Rhode Island. Id. This property, located at 4325 Post Road, Warwick, Rhode Island, was conveyed to the Debtor and her husband as tenants by the entirety at a total sale price of $465,000 (the "Transfer"). Id. (The remainder of the sale price was satisfied by a mortgage executed in the amount of $265,000 to Option One Mortgage Corporation.). The Debtor used the remainder of the money she received from her mother's estate and the dissolution of the William Grosvenor, Jr. Trust to pay "unpaid taxes and various bills and things."Id.
Immediately prior to the Transfer, the Debtor listed her assets — including various joint bank accounts, two cars, and the present value of her future contingent trust distributions — at a total of approximately $565,572, offset by approximately $148,558 in liabilities — including the debt owed to the Creditor. Immediately following the Transfer, the Debtor listed her assets — including various joint bank accounts, two cars, her equitable interest in her newly acquired property, and the present value of her future contingent trust distributions — at a total of approximately $587,782, offset by approximately $157,300 in liabilities — including the debt owed to the Creditor, but not including any mortgage payments due. The debt to the Creditor remains wholly unsatisfied at this time.
 STANDARD OF REVIEW
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleading sand other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Assoc., 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal,419 A.2d 297 (R.I. 1980)); Super. Cy. R. Civ. P. 56(c). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, no material questions of fact exist and the moving party is entitled to judgment as a matter of law." Konar v. PFL LifeIns. Co., 840 A.2d 1115, 1117 (R.I. 2004). Furthermore, the party opposing the motion for summary judgment carries "the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Tanner v. Town Council of EastGreenwich, 880 A.2d 784, 791 (R.I. 2005) (quoting Lucier v. ImpactRecreation, Ltd., 864 A.2d 635, 638 (R.I. 2005)). "When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in light most favorable to the party opposing the motion, reveals no such [disputed material issue of fact, then] the suit is ripe for summary judgment." Industrial National Bankv. Peloso, 121 R.I. 305, 306, 397 A.2d 1312, 1313 (1979).
 DISCUSSION
The purpose of the UFTA is to "prevent [a] debtor from transferring away valuable assets in exchange for less than adequate value, if [the] transfer leaves insufficient assets to compensate honest creditors."In re Bay Plastics, Inc., 187 B.R. 315, 322 (Cal. 1995); 7A(II) U.L.A.Uniform Fraudulent Transfers Act § 1(1), n. 6 (1999). Under Rhode Island law, "a conveyance is fraudulent in regard to creditors, without regard to the transferor's actual intent," if the transfer was made "without receiving a reasonably equivalent value in exchange," and the debtor was insolvent at the time of the transfer or became insolvent as a result of it. Rhode Island General Laws 1956 § 6-16-5(a) (2006); Rhode IslandDepositors' Economic Protection Corp. v. Mollicone, 677 A.2d 1337,1339 (R.I. 1996). "In this state, a determination that a conveyance made without consideration is fraudulent as to creditors does not require proof of actual fraud." Oury v. Annotti, 113 R.I. 506, 508,324 A.2d 325, 327 (1974) (citing Tanner v. Whitney, 52 R.I. 391, 394, 161 A. 122,123-24 (1932)). Thus, "the decisive question in [UFTA cases] is whether such a conveyance had the effect of depriving [the creditor] of a right which would have been legally effective had the conveyance not been made." Warwick Mun. Employees Credit Union v. Higham, 106 R.I. 363,368-369, 259 A.2d 852, 855 (1969); see also Supreme Bakery, Inc. v.Bagley, 742 A.2d 1202, 1204 (R.I. 2000) (explaining that the "validity of the conveyance is to be determined not by the debtor's fraudulent intention, even if honest, but by the effect on the creditor's right of recovery) (quoting Tanner v. Whitney, 52 R.I. 391, 394, 161 A. 122, 124
(1932)). If the debtor's transfer is found to be a fraud, the creditor can seek to have the court set aside the transfer. Sec. 6-16-5(a) (2006).
 A The Purchase of Real Estate as a Tenancy by the Entirety Is a UFTA "Transfer"
For purposes of the UFTA, a "transfer" includes "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Sec. 6-16-1(a)(12) (emphasis added). This broad definition covers the creation of a tenancy by the entirety between a debtor-spouse and a non-debtor-spouse, but does not cover the depositing of the debtor-spouse's funds into a joint checking account.
When the creditor of one debtor among multiple owners of a joint bank account attempts to attach or otherwise acquire by legal process the funds in the account, the issue then becomes "what portion of the account, if any, should be available to the creditor." Martha A. Churchill, Joint Bank Account as Subject to Attachment, Garnishment, orExecution by Creditor of One Joint Depositor, 86 A.L.R.5th 527 (2006). Some jurisdictions hold that, "since the debtor is in effect the owner of all the funds in such account and may withdraw any of them for the debtor's own use, the judgment creditor stands in no worse position vis- à -vis the account than the debtor and may garnish up to the entire amount of the funds in the account to satisfy the debt." Id. (citingFleet Bank Connecticut, N.A. v. Carillo, 691 A.2d 1068 (Conn. 1997)). Still other jurisdictions hold that "a joint bank account simply may not be garnished by the creditor of one account holder under any circumstances . . . [but that] joint owners of bank accounts prevail in such absolute terms only when they are spouses holding the account as tenants by the entirety." Id. In Rhode Island, "the general rule that joint bank accounts may be seized by creditors of one of the depositors is limited by the caveat that the creditor may reach only those funds in the account which the debtor depositor equitably owns." Donatelli v.Fleet Nat'l Bank, 692 A.2d 339, 340 (R.I. 1997) (citations omitted). Therefore, if a debtor-spouse deposits money into a joint bank account, those assets remain fully reachable by the debtor-spouse's creditor. As such, the debtor-spouse has not disposed of or parted with an asset or an interest in an asset, and the deposit is not considered a "transfer" under the UFTA.
On the other hand, the use of a debtor-spouse's assets to purchase property as a tenancy by the entirety,[1] whereby the husband and wife each hold the entire estate through an undivided interest in the whole, clearly encumbers a debtor-spouse's interest in an asset. See Cull v.Vadnais, 122 R.I. 249, 254-255, 406 A.2d 1241, 1244 (1979) (citing 4 Thompson, Real Property § 1784 at 61-62 (1979)); Bloomfield v.Brown, 67 R.I. 452, 459-465, 25 A.2d 354, 358-60 (1942) (in a tenancy by the entirety neither spouse can dispose of or otherwise encumber his or her part of the property without the consent of the other). Although under Rhode Island law a creditor has the right to attach a debtor-spouse's interest in real property held as tenancy by the entirety, such an estate "is not subject to levy and sale on an execution based upon a judgment against [one of the spouses] alone."Id. (citing Bloomfield, 25 A.2d at 360). Indeed, where a creditor chooses to attach a tenancy by the entirety against a debtor-spouse, "the attachment previously placed could be levied and implemented by execution [only] if the debtor-spouse survives . . . [but] if the non-debtor-spouse survives, he or she would take free and clear of the attachment, which would then be of no further force and effect." In reGibbons, 459 A.2d 938, 940 (R.I. 1983) (citing Knibb v. SecurityInsurance Co. of New Haven, 399 A.2d 1214 (R.I. 1979)). The purpose of the UFTA is to protect creditors from exactly these types of fraudulent transfers of property which deprive the debtor-spouse's creditor of a right which would have been legally effective had the conveyance not been made. 7A(II) U.L.A. Uniform Fraudulent Transfers Act § 1(1), n. 6;Warwick Mun. Employees Credit Union, 106 R.I. at 368-369,259 A.2d at 855. Therefore, the use of a debtor-spouse's funds to create a tenancy by the entirety is a "transfer" for purposes of the UFTA, as it would be a means to encumber an interest in an asset of the debtor-spouse.
In the case at bar, the Debtor deposited her approximately $300,000 inheritance into an out-of-state joint bank account, using a portion of those monies to pay taxes and other liabilities, but failing to pay any part of the valid Judgment owed to the Creditor. This transaction is relevant only as to Count I of Creditor's complaint, which is not before the Court on this Motion for Summary Judgment. However, under Rhode Island law, while the money was in this joint account, the Debtor equitably owned and had unfettered access to all of it, and, therefore, so did the Creditor. Thus, the depositing of money into the joint bank account would not appear to be a transfer for purposes of the UFTA. Nevertheless, relevant to the Summary Judgment Motion before the Court, when the Debtor used the remainder of her inheritance to purchase real estate conveyed to her and her husband as tenants by the entirety, the Debtor could no longer dispose of or otherwise encumber the property without the consent of her husband. Thus, the Debtor's purchase of real estate conveyed as a tenancy by the entirety clearly falls within the broad definition of "transfer" as contemplated by the UFTA.
 B There Was No Reasonably Equivalent Value Exchange in ThisTransfer
Under the Rhode Island UFTA, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. . . ." Sec.16-6-3(a). However, "value does not include an unperformed promise. . . ." Id. "Value is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." Unif. Fraudulent Transfer Act § 3, cmt. 2 (internal quotations omitted). To that end, "courts interpreting the UFTA in other jurisdictions have held value to mean the type of consideration capable of satisfying or partially satisfying a creditor's claims." Cadle Co. v. White, 2006 U.S. Dist. LEXIS 11671, 30-31 (D. Conn. 2006) (citing Cadle Co. v. Ogalin, 303 B.R. 552, 559 (D. Conn. 2004); Maddox v. Robertson, 994 F.2d 706, 709 n. 6 (9th Cir. 1993) (interpreting California's UFTA); In re Agricultural Research Tech.Group, Inc., 916 F.2d 528, 540 (9th Cir. 1990) (interpreting Hawaii's UFTA); Scholes v. African Enter. Inc., 854 F. Supp. 1315, 1328 (N.D. Ill. 1994) (interpreting Illinois' UFTA)). Indeed, the drafters of the UFTA also believed that "value" must be considered from the standpoint of the creditor, stating clearly that "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition [of value]." Unif. Fraudulent Transfer Act § 3, cmt. 2 (internal quotations omitted).
Thus, in this proceeding, the Transfer was made without a return of reasonably equivalent value in exchange. Although the real estate in question — valued at approximately $465,000 — was secured in part by a mortgage in the approximate amount of $265,000 in Mr. Hand's name alone, under the UFTA "value does not include an unperformed promise[,]" nor does "[c]onsideration having no utility from a creditor's viewpoint . . . satisfy the statutory definition." Sec. 16-6-3(a) (emphasis added); Unif. Fraudulent Transfer Act § 3, cmt. 2. The Defendants could sell the real estate — the proceeds of which would first be used to pay off Mr. Hand's mortgage in full — and then split the proceeds equally amongst themselves, to the prejudice of the Creditor of approximately $100,000. While the mortgage taken out by her husband may have value to the Debtor, he has supplied no equity into the property, and thus his future promise to perform on a debt to a third party has no value to the Creditor. Therefore, the Court holds that, for purposes of the UFTA, the Debtor's purchase of the real estate as a tenancy by the entirety transferred the Debtor's assets to her husband without any concomitant return of reasonably equivalent value.
 C The Transfer Caused the Debtor To Become Insolvent
For a transfer to be fraudulent, the debtor must be "insolvent" at the time of the transfer, or made insolvent by it. Sec. 6-16-2(a). Under the UFTA, "the level of insolvency necessary to meet the statutory requirement is not insolvency in the bankruptcy sense but merely a showing that the party's assets are not sufficient to meet liabilities as they become due." Meyer v. General Am. Corp., 569 P.2d 1094, 1096
(Utah, 1977). In other words, a debtor is "insolvent" "if the sum of [her] debts is greater than all of her assets at a fair valuations." Sec. 6-16-2(a). In making the factual determination of the debtor's solvency, it is appropriate for the court to adjust the asset values to reflect "the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period oftime to pay the debtor's debts." Lawson v. Ford Motor Co., 78 F.3d 30,35 (2d Cir. 1996) (emphasis added). Thus, to determine if the transfer made by the Debtor was fraudulent under the UFTA, the Court must compare the fair value of the Debtor's presently salable assets and liabilities at the time of the transfer to determine whether a condition of solvency or insolvency existed. First Fed. SL Ass'n v. Napoleon, 701 N.E.2d 350,354 (Mass. 1998).
An "asset" is defined by the UFTA as any property of the debtorexcept for that which is (i) "encumbered by a valid lien," (ii) "generally exempt under nonbankruptcy laws," or (iii) "property held in tenancy by the entirety to the extent it is not subject to process by a creditor holding a claim against only one tenant." Sec. 6-16-1(a)(2). The definition of asset clearly excludes any property transferred which would then be exempt from process or judicial enforcement, as "[s]olvency that is based on exempt property is no better than insolvency to a creditor because the property is not available without affirmative action by the debtor." First Nat'l Bank v. Frescoln Farms,Ltd., 430 N.W.2d 432, 436 (Iowa 1988) (citing 37 C.J.S. FraudulentConveyances § 105, at 945); Mejia v. Reed, 74 P.3d 166, 174 (Cal. 2003) (noting, for example, that retirement accounts which would be exempt from the reach of creditors are thereby exempt from the definition of "assets" under the UFTA)). Therefore, "[i]f a creditor cannot reach the property through some sort of legal process . . . the property cannot be used to show solvency." First Nat'l Bank, 430 N.W.2d at 436. More specifically, "[i]ncome not yet earned . . . is not an asset under the UFTA unless it is subject to levy by a creditor, as would be the case if, for example, the [debtor] possessed a promissory note payable at a future date." Mejia, 74 P.3d at 175. In other words, asset calculation to determine a debtor's solvency or insolvency only takes into consideration the fair market value of "assets with present salable value. . . ." § 7A(II) U.L.A. Uniform Fraudulent Transfer Act § 2, cmt.1 (1999) (quoting § 7A(II) U.L.A. Uniform Fraudulent Conveyance Act § 1(2), n. 5 (1999) (internal citations omitted)). Therefore, "interests in valid spendthrift trusts and interests in tenancies by the entireties . . . are not included" in determining whether or not a debtor is insolvent for purposes of the UFTA. Id.
Here, the Debtor was made insolvent by conveying her assets into the tenancy by the entirety. Although the Debtor claims that she remained solvent after the Transfer, two items on her proffered balance sheet are exempt from the definition of "asset" under the UFTA. First, having already determined that a tenancy by the entirety is not subject to judicial enforcement without an affirmative action by the Debtor and her husband, the Court may not take into consideration the value of the real estate which is the subject of the Transfer itself. Otherwise, no transfer of assets into property unreachable by a creditor would ever render a debtor insolvent, and the UFTA would be considered a nullity. Therefore, the Court may not take into consideration the $206,829 of "[e]quitable interest in real estate" that the Debtor lists as an asset in her answers to the Creditor's interrogatories. Second, the Court may not take into consideration the value of the Debtor's trust income, as it is undisputed that it is income not yet earned that is not subject to levy by the Creditor. (Mem. of Defs' In Supp. Of Obj. to Mot. For Summ. J. at 2 ("[t]he income [from these trusts] is not assignable nor attachable under the spendthrift terms of the trusts.")). Not only does this income depend on the Debtor being alive to receive it and the success of the investments that produce it, there is admittedly present, salable value of a valid spendthrift trust. As the Debtor's interests in her family's spendthrift trusts can neither be severed by the Creditor nor sold to pay her debts, the present value of future quarterly payments [of] $368,822[.]28" listed by the Debtor in her answer to the Creditor's interrogatories is also not properly included in determining whether or not she was made insolvent by the Transfer.
Excluding the present value of the Debtor's trust income and the value of the tenancy by the entirety, the Debtor acknowledges that she has approximately $18,321.54 in present-value, salable assets — including various bank accounts and two automobiles[2] — which are offset by approximately $157,300.00 in mature liabilities — including the debt owed to the Creditor. Therefore, the exclusion of both of these items from the Debtor's asset calculation means that the present value of her liabilities significantly outweighs the value of her assets, and that the Debtor was clearly made insolvent by purchasing the property in question.
 D The Transfer Is Void, Severing the Tenancy by theEntirety
When a creditor has been harmed by a fraudulent transfer, he or she may obtain "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim. . . ." Sec. 6-16-7(a)(1). Furthermore, the creditor may seek "[a]n injunction against further disposition by the debtor or the transferee, or both, of the asset transferred. . . ." Sec.6-16-7(a)(3)(i). Moreover, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." Sec. 6-16-7(b);see also Duffy v. Dwyer, 847 A.2d 266, 269 (R.I. 2004); Lemoi v.Lemoi, 713 A.2d 242, 244 (R.I. 1998). As stated previously, despite the fact that a creditor may attach a debtor-spouse's interest in a tenancy by the entirety, such an estate harms the creditor because it "is not subject to levy and sale on an execution based upon a judgment against [one of the spouses] alone," and if the non-debtor-spouse survives the creditor is left with nothing. See Cull, 122 R.I. at 254-255,406 A.2d at 1244 (citing 4 Thompson, Real Property § 1784 at 61-62);Bloomfield v. Brown, 67 R.I. at 459-465, 25 A.2d at 360).
Similar to other forms of joint tenancy, when a tenancy by the entirety is voided by a court, the tenancy is severed, and a tenancy in common is created in its place. See Cavanagh v. Cavanagh, 118 R.I. 608,617, 375 A.2d 911, 915 (1977) ("since the marriage was void, a tenancy by the entirety never existed, and the court concluded . . . that the parties owned . . . the property as a tenant[s] in common") (citing 4 Thompson, Real Property § 1786 at 66 (Grimes repl. 1961)); 20 Am. Jur. 2d Cotenancy and Joint Ownership § 23 (2006)). "A tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property." Id. at § 32 (2006) (citations omitted). Therefore, to the extent that the creation of a tenancy by the entirety is a fraudulent transfer that harms a creditor, that creditor may seek to void the creation of that type of tenancy, which would be replaced by a tenancy in common. The creditor may then seek to attach the debtor-spouse's fractional share of the tenancy in common.
In the present case, the Debtor made a transfer without receiving a reasonably equivalent value in exchange. Moreover, the Court holds that the Debtor was made insolvent by the transfer. Therefore, the conveyance of the Debtor's assets into a tenancy by the entirety is fraudulent as regards the Creditor. As such, the Creditor may seek to avoid the transfer, severing the tenancy by the entirety and thereby creating a tenancy in common. Furthermore, the Creditor may seek an injunction against further disposition by the Defendants of the asset transferred, ensuring that the real estate will remain available and reachable by the Creditor, who may levy execution on the Debtor's fractional share of the real property.
 CONCLUSION
The Debtor, blessed by fortune and the goodwill of her mother, received funds sufficient to pay the Creditor, who had a rightful Judgment entered against her. Nevertheless, the Debtor conspicuously failed to pay this debt, instead attempting to place her assets outside the reach of the Creditor, to the sole benefit of herself and her husband. The purpose of the UFTA is to protect honest creditors from exactly the type of fraudulent transfer made by the Debtor in this case. The Debtor cannot gratuitously give away part of her inheritance without being "[j]ust to [her] creditors before [she] is generous to [her] family." Wilkinson v. United States, 770 F. Supp. 1085, 1091-1092
(D.N.C. 1991).
For the foregoing reasons, the Court holds that there are no genuine issues of material fact that the Defendant's creation of a tenancy by the entirety was a fraudulent transfer under § 6-16-5. The Court therefore grants the Creditor's Motion for Summary Judgment as to Count II of its Complaint.
Counsel shall submit the appropriate Order for entry.
[1] In Rhode Island, tenancies by the entirety are "created when there exist the four unities integral to the existence of the joint tenancy, namely the unities of time, interest, title and possession, plus the fifth unity, two natural persons as one person in law." Cull v.Vadnais, 406 A.2d 1241, 1244 (R.I. 1979) (citing Bloomfield v.Brown, 25 A.2d 354, 356 (R.I. 1942); Knibb v. Security InsuranceCo., 399 A.2d 1214, 1216 (R.I. 1979); Van Ausdall v. Van Ausdall,48 R.I. 106, 108, 135 A.850, 851 (R.I. 1927)). "Estates held by the entirety are uniquely premised upon the common-law doctrine that husband and wife are one, so that they take the whole estate as a single person." Id. (citing 4 Thompson, Real Property § 1784 at 61-62 (1979)).
[2] With respect to the automobiles, the Debtor has not claimed valuation as to either. However, the actual value of the cars — 1993 Mazda 626 and a 1999 Toyota Corolla — would need to have a present, fair valuation in excess of $138,978.46 in order for them to affect the solvency analysis. The Court takes judicial notice that these vehicles are, at best, worth a fraction of this amount. Therefore, the actual valuation of the cars is irrelevant for the Court's purposes.